**THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| MARSHALL BROADCASTING GROUP, INC.,[1] | § § § | Case No. 19-36743 (DRJ) |
| Debtor. | § § § § | |

**ORDER (A) APPROVING BIDDING PROCEDURES AND CERTAIN BID
PROTECTIONS, (B) SCHEDULING BID DEADLINE, AUCTION DATE, AND
SALE HEARING AND APPROVING FORM AND MANNER OF NOTICE
THEREOF; AND (C) APPROVING CURE PROCEDURES AND THE FORM
AND MANNER OF NOTICE THEREOF**
**[Relates to Docket No. 113]**

Upon the motion [Docket No. 113] (the "Motion"),[2] filed by Marshall Broadcasting Group, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), for entry of an order pursuant to 11 U.S.C. §§ 363 and 365 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (a) approving bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures") and certain bidding protections, (b) scheduling the bid deadline, auction date and sale hearing (the "Sale Hearing") and approving the form and manner of notice thereof; and (c) approving procedures to cure any default pursuant to section 365(b)(1) of the Bankruptcy Code and the form and manner of notice thereof; and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O); and it appearing that notice of the Motion and the Bidding Procedures Hearing was sufficient under the circumstances, and that no other or further notice is required; and the Court having determined that the relief requested in the Motion is in the best

---

[1] The last four digits of Debtor's federal tax identification number are (7805).

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion.

interests of the Debtor and its estate, and good and sufficient cause having been shown, the Court hereby further finds as follows:

A.     The Debtor has articulated good and sufficient reasons for (i) approving the Bidding Procedures, (ii) the grant of certain bid protections in favor of one or more potential Stalking Horse Bidders, (iii) approving the manner of notice of the Motion, and establishing the Bid Deadline, the Auction, the Sale Hearing, and the assumption and assignment of the Assumed Contracts and proposed cure relating thereto, and (iv) scheduling the Sale Hearing.

B.     The Debtor's payment to a Stalking Horse Bidder (if any) of the Break-Up Fee on the terms set forth in this Order (i) is an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of section 503(b) of the Bankruptcy Code, (ii) is of substantial benefit to the Debtor's estate, (iii) is reasonable and appropriate, in light of the size and nature of the Proposed Sale and the efforts that have been and will be expended by a potential Stalking Horse Bidder notwithstanding that the Proposed Sale is subject to higher or better offers, (iv) was negotiated by the parties at arms' length and in good faith, and (v) is necessary to ensure that a potential Stalking Horse Bidder will continue to pursue its proposed acquisition of the Debtor's assets.

C.     The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Debtor's assets in part, in total, or as a going concern transaction.

**IT IS HEREBY ORDERED THAT**:

1.     The Motion (as it pertains to approval of the matters set forth herein) is **GRANTED** as set forth herein.  Any objections that have not been previously resolved or withdrawn are overruled on the merits.

**Notice Procedures**

2.        Within three (3) business days after entry of this Order, the Debtor shall serve copies of the Motion and this Order, including (i) a copy of the Bidding Procedures attached hereto as **Exhibit 1**, and (ii) the notice of Bid Deadline, Auction and Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice") (collectively the "Bid Package"), via U.S. first-class mail, postage prepaid, upon the following (collectively, the "Bid Notice Parties"): (a) all potential buyers previously identified or solicited by the Debtor or PVB and any additional parties who have previously expressed an interest to the Debtor or PVB in potentially acquiring the Assets, (b) other potentially interested parties identified by the Debtor or its advisors; (c) the U.S. Trustee; (d) counsel to any statutory committee; (e) counsel to Mission; (f) counterparties to the Debtor's executory contracts and unexpired leases; (g) all parties who have requested notice in this case; and (h) the Federal Communications Commission (the "FCC").

3.        On February 28, 2020, the Debtor shall file with the Court an initial schedule of executory contracts and unexpired leases that may be assumed and assigned as part of the Proposed Sale (the "Potential Assumed Contracts").   Concurrently therewith, the Debtor will serve a cure notice substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "Cure Notice") upon each counterparty to the Potential Assumed Contracts (each, a "Counterparty"). The Cure Notice shall identify the amounts, if any, that the Debtor believes are owed to each Counterparty to a Potential Assumed Contract in order to cure any defaults that may exist under such contract (the "Cure Amount"); *provided, however*, if the Debtor finalizes the Cure Amount with respect to Fox Broadcasting Company, LLC and Fox News Network, L.L.C. (collectively, "Fox") prior to February 28, 2020, the Debtor will provide the Cure Amount to Fox on that earlier date.   Pursuant to the Bidding Procedures Order, the Cure Notice shall also state the applicable

3

date, time and place of the Auction and Sale Hearing, and provide the date and time by which any objection (the "Cure Objection") to (i) the assumption and assignment of the applicable Potential Assumed Contract on the basis of lack of adequate assurance of future performance under section 365(b)(1) or (ii) the Cure Amount must be filed and served by the Counterparty.

4.      Prior to the commencement of the Sale Hearing, the Debtor will file with the Court a final schedule (the "Assumed Contract Schedule") of executory contracts and unexpired leases elected to be assumed by the Successful Bidder (the "Assumed Contracts").  At the Sale Hearing, the Debtor shall seek authority to assume and assign the Assumed Contracts to the Successful Bidder effective as of the closing of the Proposed Sale; *provided, however*, that the Debtor and the Successful Bidder together may agree to remove any Assumed Contract from the Assumed Contract Schedule at any time up to the closing of the Proposed Sale.  The Counterparty to any deleted Assumed Contract shall be notified of such deletion by written notice via U.S. first-class mail by no later than two (2) business days from such determination.

## Bidding Procedures and Auction

5.      The Bidding Procedures attached hereto as **Exhibit 1** and incorporated herein by reference as if fully set forth herein, are hereby approved and shall govern the bidding and Auction proceedings.

6.      The Bid Deadline shall be **March 17, 2020 at 4:00 p.m.** (prevailing Central Time). On the same day, the Debtor will provide Fox with the identity of Potential Bidders that submit bids; *provided that* Fox shall not contact the Potential Bidders, or otherwise discuss the bids or the sale with any third parties, including the Potential Bidders.  Qualified Bidders will be notified by March 18, 2020.  On the same day, the Debtor will provide Fox with the identity of the Qualified Bidders; *provided that* Fox shall not contact the Qualified Bidders, or otherwise discuss the bids

4

or the sale with any third parties, including the Qualified Bidders. To the extent a bidder determined to be a non-Qualified Bidder seeks to challenge such determination, it shall do so by filing a written pleading with the Court no later than March 20, 2020. To the extent such a pleading is filed, the Court will hold a hearing on an emergency basis. Deposits will be returned to non-Qualified Bidders by March 24, 2020.

7.      An Auction is scheduled to take place on **March 24, 2020** commencing at **10:00 a.m**. (prevailing Central Time) at the offices of Gray Reed & McGraw LLP, 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056. Immediately following the conclusion of the Auction (if any), the Debtor shall file with the Court a notice setting forth the results of the Auction. The Debtor will provide Fox with notice of the Successful Bidder by email and telephone as soon as practicable after the Auction.

8.      The Debtor is authorized to terminate the bidding process or the Auction at any time if it determines, in its business judgment, that the bidding process will not maximize value for the Debtor's estate, with notice of such termination to be filed of record with the Court.

### Sale Hearing and Objections to the Proposed Sale

9.      The Court shall commence the Sale Hearing on March 30, 2020 at 2:30 p.m. (prevailing Central Time) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, 515 Rusk Street, Courtroom 400, Houston, Texas 77002, at which time the Court shall consider the Motion, the proposed Sale, and confirm the results of the Auction, if any.[3]

10.     Objections to the Motion and the Proposed Sale shall be filed with the Bankruptcy Court and served on the following parties so as to be actually received no later than 4:00 p.m.

---

[3] As set forth in the Bidding Procedures, the Debtor may cancel the Sale Hearing if the Plan Transaction is ultimately accepted.

(prevailing Central Time) on March 27, 2020 (the "Objection Deadline"): (i) counsel to the Debtor, Levene, Neale, Bender, Yoo & Brill LLP, 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067, Attn: David B. Golubchik and Eve H. Karasik  (dbh@lnbyb.com and ehk@lnbyb.com), and Gray Reed & McGraw LLP, 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056, Attn: Jason S. Brookner and Lydia R. Webb (jbrookner@grayreed.com and lwebb@grayreed.com); (ii) counsel to the Secured Party, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: David M. Hillman and Lucy F. Kweskin (dhillman@proskauer.com and lkweskin@proskauer.com), and Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, TX 77010 Attn: Matthew D. Cavenaugh and Bruce J. Ruzinsky (mcavenaugh@jw.com and bruzinsky@jw.com); and (iii) Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Hector Duran, Jr. and Stephen Douglas Statham (hector.duran.jr@usdoj.gov and stephen.statham@usdoj.gov).

11.     The failure to timely file and serve an objection by the Objection Deadline shall be a bar to the assertion, prior to, at the Sale Hearing, or thereafter, of any such objection to the Motion, the Sale, the Debtor's consummation of the Proposed Sale, or the proposed assumption and assignment of any executory contracts or unexpired leases.  Notwithstanding the foregoing, the Objection Deadline shall not apply to any objection based upon any event occurring at the Auction.

12.     The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment made in open court.

**Bid Protections**

13.     In the exercise of its business judgment, the Debtor may, without any obligation to do so after consulting with Mission and any statutory committee, select one or more Stalking Horse

Bidders, and file notice of same with the Court, by **February 14, 2020**.  To the extent the Debtor wishes to extend the deadline to designate a Stalking Horse Bidder, it may file a motion with the Court, and the Court will consider such motion on an emergency basis.

14.      The Break-Up Fee to be paid to a Stalking Horse Bidder (if any), as more fully described in the Motion and the Bidding Procedures, is hereby approved pursuant to the terms and conditions set forth in the Motion and Bidding Procedures, and shall be paid pursuant to the terms of an order approving a Proposed Sale, or a confirmation order approving a Plan Transaction, as applicable; *provided, however*, that notwithstanding any term to the contrary set forth in the APA, the Bidding Procedures, or this Order, any potential Stalking Horse Bidder shall only be entitled to receive the Break-Up Fee either upon closing of a sale or sales to a bidder or bidders who are not the Stalking Horse Bidder(s), or following approval of a disclosure statement.

## <u>Additional Provisions</u>

15.      The terms and conditions of this Order are immediately effective and enforceable upon its entry.

16.      The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

17.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


**Signed: _____, 2020**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

4811-4814-5332.3

## <u>Exhibit 1</u>

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| MARSHALL BROADCASTING | § | |
| GROUP, INC.,[1] | § | Case No. 19-36743 (DRJ) |
| | § | |
| Debtor. | § | |
| | § | |

## BIDDING PROCEDURES[2]

Set forth below are the bidding procedures (the "Bidding Procedures") to be used with respect to a proposed transaction ("Transaction") of: (A)(i) a sale of all or a portion of the assets of Marshall Broadcasting Group, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), or (ii) a going concern sale (together, a "Proposed Sale"), or (B) a restructuring transaction under a confirmed chapter 11 plan of reorganization (a "Plan Transaction"). The Transaction contemplated by these Bidding Procedures is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to either (x) Sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") or (y) a confirmed chapter 11 plan of reorganization.

On January 22, 2020, the Debtor filed its *Motion for (I) an Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof; and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof; and (II) an Order Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims and Interests* [Docket No. 113] (the "Sale Motion"). On February 11, 2020, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") entered its *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof; and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No. --] (the "Bidding Procedures Order") approving these Bidding Procedures.

The Bidding Procedures set forth herein describe, among other things, the manner in which bidders and bids become "Qualified Bidders" and "Qualified Bids," respectively, the receipt and negotiation of bids received, the conduct of any Auction (as defined herein), the ultimate selection of the Successful Bidder (as defined herein) and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").

---

[1] The last four digits of Debtor's federal tax identification number are (7805).

[2] The decisions and determinations to be made by the Debtor under and pursuant to these Bidding Procedures are subject, in all respects, to the terms and conditions of Exhibit B attached to the Final Cash Collateral Order [Docket No. 107].

Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Sale Motion.

# I.
# Key Dates

The Debtor and PVB (defined below), have already begun the marketing process.  Before being provided with any diligence materials, interested parties must sign and return a confidentiality agreement, in a form acceptable to the Debtor in its sole discretion (a "Confidentiality Agreement").  **Requests for a Confidentiality Agreement should be made to Philip de Roziere, PVB Advisors, LLC ("PVB"), 161 S. Roscoe Blvd., Ponte Vedra Beach, FL 32082, pderoziere@pvbadvisors.com.**  Once an interested party signs and returns a Confidentiality Agreement, it will receive access to an electronic data room.  Further diligence information is set forth in Section VIII, below.

The deadlines and target dates are as follows:

| | |
|---|---|
| Deadline to designate Stalking Horse Bidder(s) | February 14, 2020 |
| Deadline to file initial Cure Notice: | February 28, 2020 |
| Bid Deadline: | March 17, 2020 at 4:00 p.m. (CT) |
| Notifications to Qualified Bidders: | March 18, 2020 |
| Deadline to object to non-Qualified Bidder status: | March 20, 2020 at 4:00 p.m. (CT) |
| Return of Deposits to non-Qualified Bidders: | March 24, 2020 |
| Auction: | March 24, 2020 at 10:00 a.m. (CT) |
| Deadline to object to Sale: | March 27, 2020 at 4:00 p.m. (CT) |
| Deadline to object to assumption and assignment of the Assumed Contracts, to the Cure Notice, and any Cure Amount: | March 27, 2020 |
| Deadline to file final Cure Notice: | March 30, 2020 |
| Sale Hearing, to approve the results of the Auction: | March 30, 2020 at 2:30 p.m. (CT)[3] |
| Deadline for Successful Bidder to seek approval of Sale from the FCC: | April 6, 2020 |

# II.
# Sale of Assets or Going Concern Transaction

The Debtor is entertaining bids for (A)(i) a going concern transaction, (ii) a sale of all or substantially all of its assets, and (iii) a sale of such smaller portion of the Debtor's assets as may be subject to a purchase agreement and as may be bid upon at Auction; and (B) a Plan Transaction.

---

[3] If the Debtor ultimately decides to pursue a Plan Transaction, the Sale Hearing will be cancelled, and the Debtor will promptly file a chapter 11 plan and pursue confirmation thereof.

The Debtor may enter into one Transaction or several Transactions with multiple parties, depending upon the bids received.

In addition, (i) the Successful Bidder(s) in any Proposed Sale shall assume the assumed liabilities as may be set forth in any purchase agreement and (ii) the Debtor shall assume and assign the assumed contracts to such Successful Bidder(s), as may be set forth in any purchase agreement(s) accepted by the Debtor.

## III.
## "As Is, Where Is"

Any Transaction(s) entered into by the Debtor shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or estate, except as may be set forth in a purchase agreement(s) with a Successful Bidder(s) or chapter 11 plan, approved by the Bankruptcy Court.

## IV.
## Free of Any and All Claims and Interests

Any Transaction entered into by the Debtor shall be free and clear of all liens, claims, interests, and encumbrances (collectively, the "Claims and Interests"), with such Claims and Interests to attach to the net proceeds of the sale.

## V.
## Participation and Bid Requirements

Any person or entity who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, a Potential Bidder must deliver the following documents to the Debtor, Mission Broadcasting, Inc. (as administrative agent under the Debtor's credit agreement) ("Mission"), PVB, and counsel to any statutory committee, at the addresses set forth below, no later than the Bid Deadline (as defined below), in a form and substance acceptable to the Debtor and its advisors (the "Required Bid Documents"):

(a)    Evidence of the Potential Bidder's financial ability to close a Transaction, in a form and substance acceptable to the Debtor in its discretion in consultation with Mission and any statutory committee. Such evidence may take the form of, among other things, current audited financial statements, bank statements, evidence of a non-contingent financing commitment, or such other documentation as the Debtor may accept in its sole discretion;

(b)    A letter stating that the Potential Bidder's offer is irrevocable until immediately following the closing of the Sale or confirmation of a chapter 11 plan, as applicable, and setting forth (i) the nature of the proposed Transaction, and if a Proposed Sale, whether such is a going concern or asset sale, which specifically identifies the assets or groups of assets to be purchased, and which includes the proposed consideration and the liabilities (if any) to be assumed, (ii) any assets expected to be excluded from the Sale, and (iii) the structure and financing of the Transaction (including, but not limited to, the sources of financing);

(c)        If a Proposed Sale, a binding, executed, and definitive copy of the form Asset Purchase Agreement attached to the Sale Motion (the "APA"), together with all schedules thereto marked to show changes to the APA and schedules that the Potential Bidder proposes (a "Marked APA"), including the purchase price in U.S. dollars for each asset or group of assets subject to the applicable bid, and a specific allocation of consideration among the groups of assets being bid upon (all asset bids must also contain an allocation);

(d)        If a Plan Transaction, an executed binding term sheet (the "Term Sheet"), together with such additional information as may be necessary to fully describe the elements of the proposed Plan Transaction, including the consideration to be paid;

(e)        A good faith earnest money cash deposit (the "Deposit") in an amount equal 10% of the total purchase price of the proposed Transaction;

(f)        Evidence of corporate authority to enter into the Transaction;

(g)        An executed Confidentiality Agreement; and

(h)        Any additional information reasonably requested by the Debtor.

## VI.
## Qualified Bidders and Qualified Bids

A Potential Bidder (i) who delivers the documents described in Section V above, (ii) whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Transaction if selected as the Successful Bidder, (iii) who the Debtor determines is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Transaction within the time frame provided by the APA or otherwise applicable in the above-captioned chapter 11 cases (the "Cases"), and (iv) whose bid constitutes a "**Qualified Bid**" pursuant to these Bidding Procedures, shall be deemed a "**Qualified Bidder**."   The Debtor will determine whether a Potential Bidder is a Qualified Bidder after such consultation with Mission and any statutory committee.  By March 18, 2020, the Debtor will notify Potential Bidders if they are Qualified Bidders, and will provide copies of all Qualified Bids to counsel to Mission and any statutory committee.  Mission is deemed to be a Qualified Bidder.

A bid will be deemed a "Qualified Bid" and considered by the Debtor only if the bid:

(a)        is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Debtor than, those contained in the APA;

(b)        contains no contingencies of any type, other than Bankruptcy Court approval of the Transaction and any applicable regulatory conditions, including but not limited to Federal Communications Commission ("FCC") approval;

4

(c)       other than any Stalking Horse Bid(s) that may be designated by the Debtor, is not conditioned upon any bid protections (such as a topping fee, termination fee, reasonable expense reimbursement, or similar type of payment);

(d)       contains an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Debtor and its assets and business prior to making its offer, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the business and assets of the Debtor in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtor's business or assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the APA, the Marked APA or the Term Sheet;

(e)       includes a list of assumed contracts and assumed liabilities (if any), and a commitment to consummate the Transaction and the assumption of the assumed liabilities (if any) within not more than ten (10) days after entry of an order by the Bankruptcy Court approving such Transaction;

(f)       discloses (i) the identity of the Potential Bidder and each entity participating in connection with the Potential Bidder and the complete terms of such participation, and (ii) any other term sheets and other written or oral understandings between the Potential Bidder and its affiliates on one hand, and any insider (as defined in section 101(31) of the Bankruptcy Code) of the Debtor, on the other; and

(g)       is received by the Bid Deadline.

In order to comply with FCC requirements for transfer of the Debtor's FCC licenses, a Qualified Bidder <u>must not</u>:

(a)       be a citizen or representative of a foreign government(s);

(b)       be more than 20% directly or 25% indirectly owned or controlled by foreign citizens or companies;

(c)       own media properties, or have officers, directors, or attributable shareholders or members with attributable interests in media properties in the relevant markets which, when combined with the Debtor's stations, would exceed the FCC's multiple ownership limits in 47 CFR 73.3555;

(d)       own media properties with a national audience share, or have officers, directors, or attributable shareholders or members with attributable interests in media properties with a national audience share which, when combined with the Debtor's stations, would exceed the FCC's national audience cap limit in 47 CFR 73.3555;

(e)       have had a broadcast or other spectrum license revoked by the FCC or a license revocation hearing designated on character qualifications of the Potential Bidder or any officers, directors, or attributable shareholders or members with attributable interests of the

Potential Bidder or having found bidder guilty of fraud or misrepresentation to the FCC so as to call into question the Potential Bidder's qualifications to be an FCC licensee; and

(f)      be subject to the denial of federal benefits pursuant to the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 862.

***All bids for a Transaction must contemplate payment in cash, in full, upon the closing of the Transaction (other than a Credit Bid), unless the Debtor agrees otherwise, after consultation with Mission and any statutory committee.***  Any bid that is not for cash, and does not otherwise comply with the above requirements, shall not be deemed to be a Qualified Bid.

Notwithstanding the foregoing, the Debtor shall have the right, in its discretion, after consultation with Mission and any statutory committee, to entertain bids that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.  A Qualified Bid will be valued, among other things, based upon factors such as the net value provided by such bid, the likelihood and timing of consummating the Transaction in question, and any other factors that the Debtor may deem relevant to the Transaction. Mission shall be deemed a  Qualified Bidder and shall be entitled to bid on a dollar-for-dollar basis the full amount of the outstanding MBG Secured Obligations and the Adequate Protection Obligations (each as defined in the Final Cash Collateral Order).

Between the times the Debtor notifies a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the written consent of the Debtor, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by the Qualified Bid, or otherwise enhance the terms of the Qualified Bid.

To the extent a bidder determined to be a non-Qualified Bidder seeks to challenge such determination, it shall do so by filing a written pleading with the Court no later than March 20, 2020.  To the extent such a pleading is filed, the Court will hold a hearing on an emergency basis.

The Debtor reserves the right to cancel, and not conduct, the Auction (as defined below) if the Debtor does not receive any Qualified Bids by the Bid Deadline.  In such event, the Debtor will file a Notice of No Auction with the Bankruptcy Court.

By submitting a bid, a Potential Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder or agent acting on another's behalf.  Such Potential Bidder acknowledges that it will not look to the Debtor or PVB for the payment of any fee or commission.  In addition, the Potential Bidder agrees to be responsible for the payment of any fee, commission, or other compensation payable to any broker, finder, or agent who alleges it has dealt with or through the Potential Bidder.

4811-4814-5332.3

## VII.
## Bid Deadline and Bid Recipients

A Qualified Bidder (other than a potential Stalking Horse and Mission) who desires to make a bid shall deliver written copies of its bid to each of the following, **no later than 4:00 p.m. Central Time on March 17, 2020** (the "Bid Deadline"):

**1.   Debtor's Counsel:**

Levene Neale Bender Yoo & Brill L.L.P.
10250 Constellation Boulevard
Suite 1700
Los Angeles, CA 90067
Attn: David B. Golubchik
        Eve H. Karasik
Email: dbg@lnbyb.com
        ehk@lbbyb.com

-and-

Gray Reed & McGraw LLP
1300 Post Oak Blvd.
Suite 2000
Houston, TX 77056
Attn.: Jason S. Brookner
        Lydia R. Webb
Email: jbrookner@grayreed.com
        lwebb@grayreed.com

**2.   Debtor's Investment Banker:**

PVB Advisors, LLC
161 S. Roscoe Blvd.
Ponte Vedra Beach, FL 32082
Attn: Philip de Roziere
Email: pderoziere@pvbadvisors.com

**3.   Counsel to Mission:**

Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Attn: David M. Hillman
        Lucy F. Kweskin
Email: dhillman@proskauer.com
        lkweskin@proskauer.com

-and-

Jackson Walker LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010
Attn: Matthew D. Cavenaugh
        Bruce J. Ruzinsky
Email: mcavenaugh@jw.com
        bruzinsky@jw.com

## VIII.
## Due Diligence

Following execution of a Confidentiality Agreement, the Debtor shall afford each interested party an opportunity to perform due diligence with respect to its business and assets. Due diligence access may include management presentations as may be scheduled by the Debtor, on-site inspections, and such other matters which an interested party may reasonably request and as to which the Debtor, in its sole discretion, may agree.  The Debtor shall designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from interested parties.  No due diligence shall continue after the Bid Deadline.

The Debtor may, in its discretion, coordinate diligence efforts such that multiple interested parties have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.

**All diligence requests should be made to Philip de Roziere of PVB, 161 S. Roscoe Blvd., Ponte Vedra Beach, FL 32082, pderoziere@pvbadvisors.com.**

Each Qualified Bidder shall be deemed to acknowledge and represent that (i) it has had an opportunity to conduct any and all due diligence regarding the Debtor's business and assets prior to making its offer, (ii) it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the business and assets in making its bid, (iii) it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets, or the completeness of any information provided in connection therewith, the Bidding Process or the Auction (as defined herein), except, as to any Stalking Horse, as expressly stated in the APA, and as to a Successful Bidder other than a potential Stalking Horse, as expressly stated in the definitive agreement with such Successful Bidder approved by the Bankruptcy Court, and (iv) that it has not engaged and will not engage in collusion in connection with the bidding process at any time.

## IX.
## Stalking Horse Declaration and Break-Up Fee

In the exercise of its business judgment, the Debtor may, without any obligation to do so after consulting with Mission and any statutory committee, select one or more bidders to act as a stalking horse (each being a "Stalking Horse Bidder" with the relevant bid being a "Stalking Horse Bid"), and file notice of same with the Court, by **February 14, 2020**.  To the extent the Debtor seeks to extend the deadline to designate a Stalking Horse Bidder, it may file a motion with the Court, and the Court will consider such motion on an emergency basis.  The Debtor may, but is not required to incur and pay a break-up fee in an amount not to exceed 3% of the cash component of the Stalking Horse Bid and, in the Debtor's discretion, reimbursement of reasonable expenses (together, the "Break-Up Fee"); *provided that* the Break-Up Fee shall only be paid pursuant to the terms of an order approving a Proposed Sale or a confirmation order approving a Plan Transaction, as applicable.  The Break-Up Fee shall only be payable either upon closing of a sale or sales to a bidder or bidders who are not the Stalking Horse Bidder(s), or following approval of a disclosure statement if the Debtor pursues a Plan Transaction.

To the extent a determination is made to provide a Break-Up Fee, the Debtor will file notice of the same with the Bankruptcy Court, and such Break-Up Fee may be paid without further action or order of the Bankruptcy Court, other than an order approving the transaction that gave rise to payment of the Break-Up Fee.

## X.
## Auction

If the Debtor receives more than one Qualified Bid, an auction (the "Auction") will be conducted, upon notice to all Qualified Bidders who have submitted Qualified Bids, at **10:00 a.m.**

**Central Time on March 24, 2020**, at the offices of Gray Reed & McGraw LLP, 1300 Post Oak Boulevard, Suite 2000, Houston Texas 77056, in accordance with the following procedures:

(a)     Only the following persons shall be entitled to attend the Auction: (i) professionals and principals or members of the Debtor, (ii) PVB, (iii) counsel to, and business persons from, Mission, (iv) counsel to any statutory committee and a committee representative, (v) the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), and (vi) professionals and principals or members of any Qualified Bidder who has timely submitted a Qualified Bid (collectively, the "Participating Parties"). Only Qualified Bidders will be entitled to make any Subsequent Bids (as defined below) at the Auction.

(b)     At the commencement of the Auction, Qualified Bidders in attendance will be informed of which Qualified Bid or combination of Qualified Bids the Debtor believes is the highest or otherwise best offer(s), and from which bidding will begin.

(c)     All Participating Parties shall be entitled to be present for all Subsequent Bids (as defined below) with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bid shall be fully disclosed to all Participating Parties throughout the entire Auction.

(d)     The Debtor may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids) for conducting the Auction, *provided that* such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith, and after consulting with Mission and any statutory committee regarding the same.

(e)     Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids as identified by the Debtor at the onset of the Auction (the "Baseline Bid"). To the extent a Stalking Horse Bidder has been named, the initial overbid must exceed the Baseline Bid by the amount of the Break-Up Fee plus and additional $350,000. Thereafter, or in the event no Stalking Horse Bidder has been named, the minimum bidding increment (the "Subsequent Bids" and each a "Subsequent Bid") shall be $350,000 (which increments may be increased or decreased by the Debtor, in its discretion, in consultation with Mission and any statutory committee, depending on the nature of the Transactions presented). The Auction shall continue in one or more rounds of bidding and shall conclude after each Participating Party has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.

The Debtor reserves the right, in the exercise of its business judgment in consultation with Mission and any statutory committee, to adjourn the Auction at one or more times to, among other things (i) facilitate discussions among the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) allow Qualified Bidders the opportunity to provide the Debtor with such additional information or evidence, as the Debtor may require in the exercise of its business judgment, that the Qualified Bidder has sufficient resources and sufficient

non-contingent debt and/or equity funding commitments to consummate the Transaction at the then-prevailing Subsequent Bid amount.

The Debtor shall maintain a transcript of the proceedings at the Auction, including the Baseline Bid, all Subsequent Bids, and the Successful Bid (as defined below).

## XI.
## Closing of Auction and Selection of Successful Bid

The Auction shall continue until there is only one bid that the Debtor determines, in its business judgment, after consultation with Mission and any statutory committee, is the highest or otherwise best Qualified Bid for a Transaction or multiple Transactions, after taking into account factors such as the speed and certainty of consummating the transaction (such bid being the "Successful Bid" and the bidder making such bid, the "Successful Bidder").[4]

All bidders will be deemed to have consented to the core and exclusive jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any and all disputes relating to, arising from, or connected with the Auction, the marketing process, the Transaction, and the construction and enforcement of any purchase agreement.

## XII.
## Back-Up Bidder

If there is an Auction, the Qualified Bidder that submits the second highest Bid at the Auction shall be required to serve as the back-up bidder (the "Back-Up Bidder") and keep such Back-Up Bidder's last Bid (the "Back-Up Bid") open and irrevocable until the earlier of (i) (A) if a Proposed Sale, 5:00 p.m. Central Time on the date which is five days after obtaining initial FCC consent to the sale to the Successful Bidder or (B) if a Plan Transaction, the entry of an order approving a disclosure statement for a chapter 11 plan (the "Disclosure Statement Approval Date"), and (ii) the closing of the Transaction with the Successful Bidder (the "Outside Back-Up Date").  If, (x) after the Sale Hearing but prior to the Outside Back-Up Date for a Proposed Sale or (y) after the conclusion of the Auction but prior to the Outside Back-up Date for a Plan Transaction, the Successful Bidder fails to consummate or proceed with the relevant Transaction because of a breach or failure to perform on the part of such Successful Bidder, or if the FCC fails to grant the initial application to approve Sale within six (6) months of entry of the Sale Order and the FCC states (or failing that, a communications law attorney mutually agreed upon by the parties reasonably believes) that the FCC's failure to act upon the initial application is based on concerns regarding Buyer's qualifications to acquire, own, operate and control the Stations, the Back-Up Bidder will be deemed to have the new Successful Bid, and the Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the Transaction with the Back-Up Bidder. The Debtor will provide notice to Mission and any statutory committee of any failure by the Successful Bidder to close the Transaction and the election to proceed to close a Transaction with the Back-Up Bidder.

---

[4] Exhibit B to the Final Cash Collateral Order shall govern with respect to any inability of the Debtor's directors to reach unanimous consent on bidding- or auction-related matters.

4811-4814-5332.3

## XIII.
## Right to Credit Bid

Any creditor that has a valid, perfected, unavoidable, and enforceable security interest (a "Security Interest") in the Debtor's assets (any such creditor, a "Secured Party") may make one or more credit bids for all or any portion of the secured claim(s) held by such Secured Party at the Auction, subject to the requirements of section 363(k) of the Bankruptcy Code (a "Credit Bid"). Mission shall be permitted to Credit Bid on a dollar-for-dollar basis in an amount up to the full amount of the outstanding MBG Secured Obligations and the Adequate Protection Obligations (each as defined in the Final Cash Collateral Order), pursuant to paragraph 10(e) of the Final Cash Collateral Order.

In order to qualify to Credit Bid, a Secured Party must be a Qualified Bidder and a Credit Bid must qualify as a Qualified Bid.  Mission is deemed to be a Qualified Bidder.

## XIV.
## The Sale Hearing and Return of Deposits

In the event one or more Proposed Sales are accepted by the Debtor, a hearing to approve the Sale(s) will take place before the Honorable David R. Jones, Chief United States Bankruptcy Judge, **on March 30, 2020 at 2:30 p.m. Central Time**, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, 515 Rusk Street, Courtroom 400, Houston, Texas 77002.  The Sale Hearing may be adjourned or rescheduled by the Debtor without notice other than by an announcement made at the Sale Hearing.

The Debtor will not be bound by a Successful Bid for a Proposed Sale or a Back-Up Bid for a Proposed Sale unless and until the Bankruptcy Court has approved the same.  Following Bankruptcy Court approval of a Proposed Sale with the Successful Bidder, if the Successful Bidder fails to consummate the Proposed Sale for any reason, then the Back-Up Bidder will be deemed to be the Successful Bidder and the Debtor will enter into a Sale with the Back-Up Bidder on the terms of the Back-Up Bid without any further order of the Bankruptcy Court, and the Debtor may pursue any and all available remedies against the Successful Bidder in connection with its failure to consummate the Sale.

If the Debtor chooses to move forward with a Plan Transaction, the Sale Hearing will be cancelled and notice of the same will be filed with the Bankruptcy Court.

The Deposit (together with interest, if any, thereon) of the Back-Up Bidder for a Proposed Sale will not be returned until two (2) business days following the closing of the Sale to the Successful Bidder.  The Deposit (together with interest, if any, thereon) of all other Qualified Bidders will be returned within 48 hours of the Auction concluding. The Deposit of the Successful Bidder (together with interest, if any, thereon) shall be applied against the payment of the Proposed Sale consideration upon the closing of the Sale.  In the event a Bidder fails to close as a result of its own default, its Deposit shall be released to, and retained by, the Debtor.

The Deposit (together with interest, if any, thereon) of the Back-Up Bidder for a Plan Transaction will not be returned until two (2) business days following the Disclosure Statement Approval Date.  The Deposit (together with interest, if any, thereon) of all other Qualified Bidders

will be returned within 48 hours of the Auction concluding.  The Deposit of the Successful Bidder for a Plan Transaction (together with interest, if any, thereon) shall be applied against the payment of the Plan Transaction consideration at the time a chapter 11 plan is confirmed.  In the event a Bidder fails to close as a result of its own default, its Deposit shall be released to, and retained by, the Debtor.

Deposits made by Potential Bidders who are not determined to be Qualified Bidders will be returned within five (5) business days after the Bid Deadline.

**XV.**
**Reservation of Rights and Fiduciary Obligation**

Notwithstanding any term to the contrary herein, the Debtor, in consultation with Mission and any statutory committee, reserves the right to: (i) modify the Bidding Procedures at any time; (ii) determine which Qualified Bid, if any, is the highest or otherwise best offer; (iii) reject at any time, any bid that is: (a) inadequate or insufficient ; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the APA; or (c) contrary to the best interests of the Debtor, its estate, and creditors as determined by the Debtor in its sole discretion; and (iv) pursue a sale or other transaction through a chapter 11 plan.

Nothing in these Bidding Procedures shall require the Debtor, the board of directors or similar governing body of the Debtor, or any individual board member or officer of the Debtor to take any action, or to refrain from taking any action, with respect to these Bidding Procedures or the Auction, to the extent such persons or entities determine, on the advice of counsel, that taking or refraining from taking such action, is required to comply with applicable law or its fiduciary obligations.

12

**<u>Exhibit 2</u>**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § |
| | § |
| | §      Chapter 11 |
| MARSHALL BROADCASTING | § |
| GROUP, INC.,[1] | §      Case No. 19-36743 (DRJ) |
| | § |
| Debtor. | § |
| | § |
| | § |

## NOTICE OF BID DEADLINE, AUCTION AND SALE HEARING

    **PLEASE TAKE NOTICE** that on January 22, 2020, the Debtor filed its *Motion for (I) an Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof; and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof; and (II) an Order Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims and Interests* [Docket No. 113] (the "Sale Motion").

    **PLEASE TAKE FURTHER NOTICE** that on February 11, 2020, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") entered its *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof; and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No. --] (the "Bidding Procedures Order") approving certain bidding procedures attached thereto as Exhibit 1.

    **PLEASE TAKE FURTHER NOTICE** that all interested parties are invited to seek to become a Qualified Bidder and submit a Qualified Bid to purchase all or a portion of the Debtor's business and assets in accordance with the terms of the Bidding Procedures Order and the bidding procedures.  The deadline for Potential Bidders to submit Qualified Bids is **March 17, 2020 at 4:00 p.m.**

    **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures Order, unless cancelled, an Auction will take place on **March 24, 2020** commencing at **10:00 a.m.** (prevailing Central Time) at the offices of Gray Reed & McGraw LLP, 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056.  The Auction will proceed, and be conducted, pursuant to the terms of the Bidding Procedures.

    **PLEASE TAKE FURTHER NOTICE** that a hearing on the sale of the Debtor's assets, including the assumption and assignment of any executory contracts (the "Sale Hearing"), will take place on **March 30, 2020 at 2:30 p.m.** (prevailing Central Time) in the United States

---

[1] The last four digits of Debtor's federal tax identification number are (7805).

Bankruptcy Court for the Southern District of Texas, Houston Division, 515 Rusk Street, Courtroom 400, Houston, Texas 77002.  As set forth in the Bidding Procedures, the Auction and the Sale Hearing may be cancelled, with a notice of cancellation to be filed by the Debtor with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that any objection to the assumption and assignment of any executory contract or unexpired lease, or any cure amount related thereto, shall be filed by **March 27, 2020** and served upon the Notice Parties designated below.  To the extent any such objection is filed, a subsequent hearing will be scheduled with notice to the objecting party.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Sale(s) is **March 27, 2020 at 4:00 p.m.** (prevailing Central Time).  Objections, if any, must (a) be in writing, (b) state with specificity the nature of such objection, (c) comply with the Federal Rules of Bankruptcy Procedure, and (d) be filed with the Court and served on undersigned counsel for the Debtor, the United States Trustee for the Southern District of Texas, and Mission Broadcasting, Inc. (as administrative agent under the Debtor's credit agreement) at the addresses listed below (the "Notice Parties").

1. **Debtor's Counsel:**

Levene Neale Bender Yoo & Brill L.L.P.
10250 Constellation Boulevard
Suite 1700
Los Angeles, CA 90067
Attn: David B. Golubchik
         Eve H. Karasik
Email: dbg@lnbyb.com
           ehk@lbbyb.com

-and-

Gray Reed & McGraw LLP
1300 Post Oak Blvd.
Suite 2000
Houston, TX 77056
Attn.: Jason S. Brookner
         Lydia R. Webb
Email: jbrookner@grayreed.com
           lwebb@grayreed.com

2. **United States Trustee for the Southern District of Texas:**

Office of the United States Trustee
515 Rusk Street
Suite 3516
Houston, Texas 77002
Attn: Hector Duran
Email: Hector.Duran.Jr@usdoj.gov

3.   **Counsel to Mission:**

| | |
|---|---|
| Proskauer Rose LLP | Jackson Walker LLP |
| Eleven Times Square | 1401 McKinney Street, Suite 1900 |
| New York, NY 10036 | Houston, TX 77010 |
| Attn: David M. Hillman                    -and- | Attn: Matthew D. Cavenaugh |
|        Lucy F. Kweskin |        Bruce J. Ruzinsky |
| Email: dhillman@proskauer.com | Email: mcavenaugh@jw.com |
|           lkweskin@proskauer.com |           bruzinsky@jw.com |

**PLEASE TAKE FURTHER NOTICE** that copies of pleadings related to the proposed sale(s), including the Bidding Procedures Order (and attached Bidding Procedures) approved by the Bankruptcy Court, are available on the Bankruptcy Court's website at http://ecf.txs.uscourts.gov/ or by contacting Debtor's counsel via email at the addresses listed above.

Respectfully submitted this __th day of February, 2020.

**GRAY REED & McGRAW LLP**

By: _/s/ Jason S. Brookner_
     Jason S. Brookner
        Texas Bar No. 24033684
     1300 Post Oak Blvd., Suite 2000
     Houston, Texas 77056
     Telephone:  (713) 986-7000
     Facsimile:  (713) 986-7100
     Email:        jbrookner@grayreed.com

          -and-

     Lydia R. Webb
        Texas Bar No. 24083758
     1601 Elm Street, Suite 4600
     Dallas, Texas 75201
     Telephone:  (214) 954-4135
     Facsimile:  (214) 953-1332
     Email:        lwebb@grayreed.com

          -and

3

David B. Golubchik (*pro hac vice*)
Eve H. Karasik (*pro hac vice*)
**LEVENE NEALE BENDER YOO**
**& BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: dbg@lnbyb.com
ehk@lnbyb.com

**COUNSEL TO THE DEBTOR**

## CERTIFICATE OF SERVICE

I hereby certify that on February __, 2020, a true and correct copy of this *Notice of Bid Deadline, Auction, and Sale Hearing* has been served (i) electronically via CM/ECF on all parties who have subscribed for electronic notice in this case, (ii) via U.S. first-class mail on all parties listed on the Debtor's Official Service List and (iii) via U.S. first-class mail or email if available to (a) all potential buyers previously identified or solicited by the Debtor or its advisors and any additional parties who have previously expressed an interest to the Debtor or PVB in potentially acquiring the Assets; (b) counterparties to the Debtor's executory contracts and unexpired leases; and (c) the Federal Communications Commission.

*/s/ Jason S. Brookner*
Jason S. Brookner

**<u>Exhibit 3</u>**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § | |
| | § | Chapter 11 |
| MARSHALL BROADCASTING | § | |
| GROUP, INC.,[1] | § | Case No. 19-36743 (DRJ) |
| | § | |
| Debtor. | § | |
| | § | |

**NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES SUBJECT TO
POSSIBLE ASSUMPTION AND ASSIGNMENT AND PROPOSED CURE AMOUNTS**

 **PLEASE TAKE NOTICE** that pursuant to the terms of that certain *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof; and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No. --] (the "Bidding Procedures Order"), Marshall Broadcasting Group, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), may hold an Auction for the sale of substantially all of its assets on March 24, 2020 at the Houston office of Gray Reed & McGraw LLP.

 **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, the Debtor hereby provides its notice (the "Cure Notice") of proposed cure amounts (each a "Cure Amount" and collectively, the "Cure Amounts") for all contracts and leases subject to potential assumption and assignment to the successful bidder(s) at Auction.

 **PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** are schedules of the executory contracts and unexpired leases (collectively, the "Potential Assumed Contracts and Leases") that may be included as part of the sale of the Debtor's assets and the proposed Cure Amount for each such lease or contract.

 **PLEASE TAKE FURTHER NOTICE** that any objection to a Cure Amount must be filed with the Bankruptcy Court and served on the undersigned counsel so as to be actually received by March 27, 2020 (the "Cure Objection Deadline").

 **PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, the Cure Amounts set forth in the Cure Notice shall be binding on all parties unless an objection thereto is timely filed and served. If an objection to the assumption and assignment of the Potential Assumed Contracts and Leases or to the Cure Notice and any Cure Amount cannot be resolved consensually among the parties, the Court will set a hearing to determine such matters as soon thereafter as is practicable, and the Debtor is permitted to give notice only to the objecting party and those parties who have filed a notice of appearance.  The failure to timely file and serve an

---

[1] The last four digits of Debtor's federal tax identification number are (7805).

objection shall be deemed consent to the assumption and assignment of the Potential Assumed Contracts and Leases and to the Cure Amounts, and any and all objections thereto shall be deemed forever released and waived.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of any contracts or leases on **Exhibit A** hereto shall not constitute or be deemed to be a determination or admission by the Debtor that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Respectfully submitted this ___ day of February, 2020.

**GRAY REED & McGRAW LLP**

By: _/s/ Jason S. Brookner_
    Jason S. Brookner
    Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:     jbrookner@grayreed.com

    -and-

    Lydia R. Webb
    Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:     lwebb@grayreed.com

    -and

David B. Golubchik (*pro hac vice*)
Eve H. Karasik (*pro hac vice*)
**LEVENE NEALE BENDER YOO**
    **& BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: dbg@lnbyb.com
      ehk@lnbyb.com

**COUNSEL TO THE DEBTOR**

2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the ___ day of February, 2020, he caused a true and correct copy of the foregoing document to be served via CM/ECF on all parties who have subscribed for electronic notice in this case, and via email (if email addresses are available) and first class U.S. mail on each counterparty listed in **Exhibit A**.

*/s/ Jason S. Brookner*
Jason S. Brookner

3

**<u>Exhibit A</u>**

**Schedule of Executory Contracts and Unexpired Leases**