**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
02/23/2021

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| MARSHALL BROADCASTING | § | |
| GROUP, INC.,[1] | § | Case No. 19-36743 (DRJ) |
| | § | |
| Debtor. | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER APPROVING DEBTOR'S DISCLOSURE STATEMENT
AND CONFIRMING DEBTOR'S PLAN OF REORGANIZATION**
[Relates to Docket No. 408]

The *Debtor's Combined Disclosure Statement and Chapter 11 Plan*, dated December 31, 2020 [Docket No. 408] (as amended, modified or supplemented, the "Plan," the "Disclosure Statement," or the "Combined Disclosure Statement and Plan")[2] having been filed by the above-captioned debtor and debtor in possession (the "Debtor"); and the Court having entered the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement; (III) Establishing and Approving Notice Procedures; (IV) Establishing Related Deadlines; and (V) Granting Related Relief* [Docket No. 416] (the "Notice Order"); and the Plan containing no impaired classes entitled to vote on the Plan; and the Combined Notice and the Notice of Unimpaired Status having been approved and served on all non-voting classes and other parties in interest in this case pursuant to the Notice Order, as attested to in the *Certificate of Service* [Docket No. 418] (the "Certificate of Service"); and the *Notice of Filing of Plan Supplement for the Debtor's Chapter 11 Plan*, together with certain exhibits to the Plan [Docket No. 425] (as amended from time to time, the "Plan Supplement")

---

[1] The last four digits of the Debtor's federal tax identification number are (7805).

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. A copy of the Plan is attached here as **Exhibit 1**.

having been filed on February 16, 2021; and the Debtor having filed (i) the *Debtor's Memorandum of Law in Support of Final Approval of the Debtor's Disclosure Statement and Confirmation of the Debtor's Plan of Reorganization* [Docket No. [●]] (the "Confirmation Brief"), and (ii) the *Declaration of Pluria Marshall, Jr. in Support of Confirmation of the Debtor's Plan of Reorganization* [Docket No. [●]] (the "Marshall Declaration"); and the Combined Hearing having been held before this Court on February 23, 2021, after due and sufficient notice was given to Holders of Claims against, and Equity Interests in, the Debtor and other parties-in-interest in accordance with the Notice Order, title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the local bankruptcy rules of this Court (the "Bankruptcy Local Rules"), as established by the Certificate of Service filed with this Court prior to the Combined Hearing; and upon all of the proceedings held before this Court and after full consideration of: (i) the Plan; (ii) the Disclosure Statement; (iii) the Plan Supplement; (iv) the Confirmation Brief; (v) the testimony proffered or presented at the Combined Hearing; (vi) the Marshall Declaration; (vii) the Certificate of Service; and (viii) all other evidence proffered or adduced, and arguments of counsel made, at the Combined Hearing; and after due deliberation thereon; and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.     <u>Findings of Fact; Conclusions of Law</u>. The determinations, findings, judgments, decrees, orders and conclusions set forth in this order (the "Confirmation Order") and on the record at the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute a conclusion of law, it is adopted as

4831-5137-5065.3

such.  To the extent any of the following conclusions of law constitute a finding of fact, it is adopted as such.

B.    Chapter 11 Petition.  On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court (the "Chapter 11 Case"). Since the Petition Date, the Debtor has operated its business and managed its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official statutory committee, trustee or examiner was appointed in this Chapter 11 Case.

C.    Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).  This Court has subject matter jurisdiction over this matter and the Chapter 11 Case pursuant to 28 U.S.C. § 1334.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during this Chapter 11 Case.  Approval of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C. § 157(b)(2).  This Court has exclusive jurisdiction to enter a final order determining that the Disclosure Statement and the Plan comply with all of the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.

D.    Adequacy of Disclosure Statement.   The Disclosure Statement (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy rules, laws, and regulations, and (ii) contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein, and (iii) is hereby approved in all respects.

E.    No Impaired Classes.  The Plan contains no impaired Classes of Claims or Equity Interests. Accordingly, under 11 U.S.C. § 1126(f), all Classes of Claims and Equity Holders are

3

deemed to accept the Plan, and the Debtor was not required to solicit votes or acceptances from any Classes.

F.      Notice of Combined Hearing. The Debtor has given proper and sufficient notice of the Combined Hearing as required by Bankruptcy Rule 3017(d). Due, adequate, and sufficient notice of the Combined Hearing, the Disclosure Statement, the Plan, the Plan Supplement, and other dates and deadlines described in the Notice Order, together with all deadlines for objecting to the Disclosure Statement and the Plan and opting out of the releases contained therein, has been given to all known Holders of Claims and Equity Interests substantially in accordance with the procedures set forth in the Notice Order and in substantial compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations. Such transmittal and service were adequate and sufficient under the circumstances, and no other or further notice is or shall be required. All parties in interest had the opportunity to appear and be heard at the Combined Hearing, and no other or further notice is required.

G.      Burden of Proof. The Debtor, as the proponent of the Plan, has met its burden of proving the elements of sections 1129(a) of the Bankruptcy Code are satisfied by a preponderance of the evidence. Further, each witness who testified on behalf of the Debtor at, or in connection with, the Combined Hearing (whether live, by proffer or by declaration) was credible, reliable and qualified to testify as to the topics addressed in his or her testimony.

H.      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

(1)     Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1)).  In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the Plan designates four Classes of Claims and Equity Interests, based on the differences in the legal nature or priority of such Claims and Equity Interests.  The Claims and Equity Interests placed in each Class are substantially similar to the other Claims or Equity Interests, as the case may be, in each such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes are proper and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Equity Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2)     Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  The Plan specifies that Other Secured Claims (Class 1), Other Priority Claims (Class 2), General Unsecured Claims (Class 3), and Equity Interests (Class 4) are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(3)     Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  The Plan specifies that there are no impaired classes, thereby rendering section 1123(a)(3) of the Bankruptcy Code inapplicable.

(4)     No Discrimination Within Classes (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment by the Debtor for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(5)     Implementation of Plan (11 U.S.C. § 1123(a)(5)).  The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(6)     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).  The Plan provides that the organizational documents of the Reorganized Debtor shall prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. Additionally, on February 16, 2021, the Debtor filed the Plan Supplement [Docket No. 425] containing the amended Charter Documents, satisfying section 1123(a)(6).

(7)     Selection of Directors and Officers (11 U.S.C. §§ 1123(a)(7) and 1129(a)(5)).  In the Plan, the Debtor identified Pluria Marshall, Jr. as the sole director and chief executive officer of the Reorganized Debtor.  In the Plan Supplement, the Debtor disclosed the qualifications of, and nature of compensation for, Mr. Marshall.  Mr. Marshall was selected in a manner consistent with the interests of creditors and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(8)     Additional Plan Provisions (11 U.S.C. § 1123(b)).  The Plan contains certain provisions that may be construed as permissive, but are not required for confirmation under the Bankruptcy Code.  These discretionary provisions comply with

5

section 1123(b) of the Bankruptcy Code, are appropriate, in the best interests of the Debtor and its Estate and are not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (i) the assumption or rejection of executory contracts and unexpired leases, and (ii) releases and exculpation of various Persons and Entities, as discussed more fully immediately below.

(9)     Identification of Plan (Bankruptcy Rule 3016(a)).  The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Clerk of this Court satisfied Bankruptcy Rule 3016(a).

I.     Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).  The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.   In accordance with Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, subordination, and other legal rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim.  The compromise and settlement of such Claims embodied in the Plan are in the best interests of the Debtor, its Estate, and all holders of Claims and Equity Interests, and are fair, equitable, and reasonable.

J.     Debtor Releases. Article X.C of the Plan describes certain releases granted by the Debtor and its Estate (the "Debtor Releases").  For the reasons set forth on the record of this Chapter 11 Case and the evidence proffered or adduced at the Combined Hearing, such releases fair and equitable and in the best interests of the Debtor, the Estate, and the Holders of Claims and Equity Interests. Additionally, the Debtor Releases are: (a) a good-faith settlement and compromise of the Claims and Causes of Action released by Article X.C of the Plan; (b) given, and made, after due notice and opportunity for hearing; and (c) a bar to the Debtor or the Reorganized Debtor asserting any Claim or Cause of Action released by Article X.C of the Plan.

6

K.     Third Party Release. Article X.D of the Plan describes certain consensual releases granted by the Releasing Parties (the "Third Party Release"). The Third Party Release provides finality for the Debtor, the Reorganized Debtor, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtor.

(1)     The Third Party Release was properly noticed.  The Notice of Unimpaired Status sent to all Holders of Claims and Equity Interests unambiguously stated that the Plan contains the Third Party Release and set forth the terms of the Third Party Release.  The Notice of Unimpaired Status further provided all Holders of Claims and Equity Interests with the *Optional: Release Opt Out Form* (the "Release Opt Out Form"), which allowed any Holder of Claims or Equity Interests to complete the form and mail or email it to Debtor's counsel in order to opt out of the Third Party Release. In addition, the Notice of Unimpaired Status advised parties in interest to carefully review the release, exculpation, and injunction provisions and emphasized in capitalized and boldface type that any party should file a timely objection if they opposed the Plan.  The Notice of Unimpaired Status further emphasized in bold and capitalized typeface the deadline for submitting the Release Opt Out Form.

(2)     The Third Party Release is (a) consensual; (b) specific in language; (c) integral to the Plan; and (d) given for consideration and not violative of the Bankruptcy Code. The Third Party Release is fully consensual because all parties in interest, including all Releasing Parties, were provided with notice of the Third Party Release, the Plan, the Chapter 11 Case, and the deadline to file the Release Opt Out Form or objections to confirmation of the Plan, and were properly informed that the Plan contained release provisions that could affect such parties' rights.

(3)     The Third Party Release is sufficiently specific as to put the Releasing Parties on notice of the nature of the released Claims and Causes of Action, and it is appropriately tailored under the facts and circumstances of this Chapter 11 Case. The Third Party Release is conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Combined Notice, and the Release Opt Out Form.

(4)     The Third Party Release is integral to the Plan because it facilitated participation in both the formation of the Plan and the Chapter 11 process generally and will incentivize and facilitate the Reorganized Debtor's fresh start and offer certainty to all stakeholders.

(5)     The Third Party Release was given in exchange for good and valuable consideration provided by the Released Parties. Each of the Released Parties provided a corresponding release under the Plan and provided other benefits to this Chapter 11 Case, such as providing or agreeing to provide valuable services to the Debtor.

(6)     The Third Party Release is therefore: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and

7

compromise of the Claims and Causes of Action released thereby; (c) in the best interests of the Debtor, its Estate, and all Holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing and for submission of the Release Opt Out Form; and (f) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Release. The Third Party Release is consistent with established practice in this jurisdiction and others.

L.      Exculpation.  The exculpation, described in Article X.E of the Plan (the "Exculpation"), is proper under applicable law because it was proposed in good faith and is appropriately limited in scope. Without limiting anything in the Exculpation, each Exculpated Party is appropriately released and exculpated from any liability to any Holder of a Cause of Action, Claim, or Equity Interest for any postpetition act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, consummation of the Sale Transaction, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Settlement Agreement and any term sheets or proposals related thereto, the Plan, or any restructuring transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpation, including its carve-out for actual fraud, gross negligence, and willful misconduct, is consistent with established practice in this jurisdiction and others.

M.     The Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).
The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(1)     The Debtor is a proper debtor under section 109 of the Bankruptcy Code and proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

(2)     The Debtor has complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126, except as otherwise provided or permitted by orders of this Court.

(3)     The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Notice Order in transmitting the Plan, the Disclosure Statement, the Notice of Combined Hearing and Notice of Unimpaired Status and related documents and notices.

N.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the Plan itself (and the Plan Supplement), and the formulation and confirmation of the Plan. The good faith of the Debtor is evident from the facts and records of the Chapter 11 Case, the Disclosure Statement, and the record of the Combined Hearing and other proceedings held in the Chapter 11 Case. The Plan itself, including provisions for payment in full of all Allowed Claims and retention of Equity Interests, and the process leading to its formulation, provide independent evidence of the good faith of the Debtor, serve the public interest, and assure fair treatment to Holders of Claims and Equity Interests. Consistent with the overriding purpose of the Bankruptcy Code, the Chapter 11 Case was filed, and the Plan was proposed, with the legitimate and honest purpose of reorganizing the Debtor and maximizing the value of the Debtor's Estate for the benefit of all creditors and shareholders.

9

O.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtor or Reorganized Debtor, as applicable, for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case requiring approval, has been approved by, or is subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

P.     Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the Persons proposed to serve as the initial directors and officers of the Reorganized Debtor after the Effective Date of the Plan have been fully disclosed in the Plan. Such Persons' appointment to, or continuance in, such offices is consistent with the interests of Holders of Claims against and Equity Interests in the Debtor and with public policy. Mr. Marshall's identity as the sole insider to be employed or retained by the Reorganized Debtor and the nature of Mr. Marshall's compensation have also been fully disclosed in the Plan Supplement.

Q.     No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtor is not subject to any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Case.

R.     Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis set forth in Article VI.C–D of the Disclosure Statement and other evidence proffered or adduced at the Combined Hearing: (a) is reasonable, persuasive, and credible; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that no Classes are

10

Impaired; and (e) establishes that each Holder of a Claim will be paid in full in cash on the Effective Date and holders of Equity Interests will retain their interest, and thus all such holders, will receive or retain under the Plan, on account of such Claims or Equity Interests, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holders would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

S.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  The Holders of Other Secured Claims (Class 1), Other Priority Claims (Class 2), General Unsecured Claims (Class 3), and Equity Interests (Class 4) are unimpaired and, thus, under section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan.  Thus, section 1129(a)(8) of the Bankruptcy Code is satisfied.

T.    <u>Treatment of Administrative Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Allowed Administrative Claims and Allowed Priority Tax Claims under <u>Article III.A</u> of the Plan satisfies the requirements of section 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, thereby satisfying section 1129(a)(9) of the Bankruptcy Code.

U.    <u>Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>.  Because there are no impaired classes under the Plan, as set forth in <u>Article IV.F</u> of the Plan, section 1129(a)(10) does not apply.

V.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The evidence proffered or adduced at or prior to the Combined Hearing, including the feasibility analysis set forth in <u>Article V.D</u> of the Disclosure Statement, the Confirmation Brief, and the Marshall Declaration, (i) is reasonable, persuasive, and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions,

4831-5137-5065.3

(iii) has not been controverted by other evidence, and (iv) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtor being able to meet its financial obligations under the Plan, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor or any successor to the Reorganized Debtor, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

W.      Payment of Fees (11 U.S.C. § 1129(a)(12)).   All fees payable under 28 U.S.C. § 1930 have been paid or will be paid pursuant to Article III.D of the Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

X.      No Retiree Benefits (11 U.S.C. § 1129(a)(13)).   The Debtor does not have obligations to pay retiree benefits and, therefore, section 1129(a)(13) of the Bankruptcy Code, to the extent such section is applicable to the Debtor, is satisfied.

Y.      Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14), (15), and (16)). The Debtor does not owe any domestic support obligations, is not an individual, and is not a nonprofit corporation, and thus sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case.

Z.      No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).   There are no rejecting classes under the Plan. As set forth in Article IV.F of the Plan, section 1129(b) does not apply.

AA.     Only One Plan (11 U.S.C. § 1129(c)).   No other plan has been proposed in the Chapter 11 Case. Section 1129(c) of the Bankruptcy Code is therefore satisfied.

4831-5137-5065.3

BB.     <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

CC.     <u>Small Business Case (11 U.S.C. § 1129(e))</u>.  The Chapter 11 Case is not a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

DD.     <u>Satisfaction of Confirmation Requirements</u>.  Based on the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Combined Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

EE.     <u>Implementation of Other Necessary Documents and Agreements</u>.  All documents and agreements necessary or advisable to implement or carry out the Plan, the Restructuring Transactions and the other transactions contemplated by the Combined Disclosure Statement and Plan are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtor, its Estate and Holders of Claims and Equity Interests, and shall be valid, binding and enforceable in accordance with their respective terms and conditions.   The Debtor has exercised reasonable business judgment in determining which documents and agreements to enter into and has provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, are fair and reasonable and approved.  The Debtor and the Reorganized Debtor, as applicable, are authorized, without any further notice to or action, order or approval of this Court, to finalize, execute and

13

deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

FF.  Retention of Jurisdiction.  Upon the Effective Date, this Court shall retain jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Case, as set forth in Article XIII of the Plan and as contemplated herein.

GG.  Classification Takes Into Account Subordination Rights.  The classification and manner of satisfying all Claims and Equity Interests under the Plan takes into consideration all contractual, legal and equitable rights, including subordination and turnover rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Equity Interest may have against another Holder of a Claim or Equity Interest with respect to any distribution made pursuant to the Plan.

HH.  Additional Findings Regarding Releases.  The releases provided pursuant to Article X of the Plan (i) represent a sound exercise of the Debtor's business judgment; (ii) formed an essential part of the agreement among the Persons participating in the negotiation and formulation of the Plan; and (iii) represented appropriate, consensual releases under section 1123(b)(3)(A) and Fifth Circuit precedent.

II.  Plan Supplement.  The filing and notice of the Plan Supplement, and any modifications or supplements thereto, was proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice is or shall be required.

JJ.  Incorporation by Reference.  The terms of the Plan, the Plan Supplement, and the exhibits and schedules thereto are incorporated by reference into, and are an integral part of, this Confirmation Order. The terms of the Plan, the documents contained in the Plan Supplement, all

14

exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date. Any reference in this Confirmation Order to the Plan includes and incorporates the Plan Supplement and exhibits and schedules thereto, as applicable.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. <u>Confirmation of the Plan</u>. All requirements for confirmation of the Plan have been satisfied. The Plan is approved and confirmed under section 1129 of the Bankruptcy Code. Each of the terms and conditions of the Plan and the exhibits and schedules thereto, including, without limitation, the Plan Supplement, are an integral part of the Plan. The Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

2. <u>Final Disclosure Statement Approval</u>. The Disclosure Statement (i) contains "adequate information" as that term is defined in section 1125(a)(1) of the Bankruptcy Code and interpreted by applicable case law with respect to the Debtor, the Plan, and the transactions contemplated therein; and (ii) is approved in all respects on a final basis.

3. <u>Objections</u>. Based upon the record of the Combined Hearing and the Chapter 11 Case, any objections that have not been consensually resolved, withdrawn, waived or settled, and all reservations of rights included therein, are overruled on the merits and for the reasons set forth on the record at the Combined Hearing.

4. <u>Provisions of Plan Non-severable and Mutually Dependent</u>. The provisions of the Plan are (i) non-severable and mutually dependent; (ii) valid and enforceable pursuant to their terms; and (iii) integral to the Plan, and may not be deleted or modified except in accordance with <u>Article XII</u> of the Plan.

5.      Distributions Are Fair. The distribution of Cash to the Holders of Allowed Claims is fair and for reasonably equivalent value.

6.      Binding Effect. Pursuant to section 1141 of the Bankruptcy Code and the other applicable provisions of the Bankruptcy Code, and without limiting or altering Article XV of the Plan, the provisions of the Plan (including the exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with, the Plan) and this Confirmation Order shall be binding on (i) the Debtor and the Reorganized Debtor; (ii) all Holders of Claims against and Equity Interests in the Debtor; (iii) all Persons and Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan; (iv) each Person and Entity acquiring property under the Plan; and (v) any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor and the respective successors and assigns of each of the foregoing, to the maximum extent permitted by applicable law, and notwithstanding whether or not such Person or Entity (x) shall receive or retain any property, or interest in property, under the Plan, (y) has filed a proof of claim or interest in the Chapter 11 Case or (z) failed to file an objection to the Plan.

7.      Automatic Stay. Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunction set forth in Article X.F of the Plan and sections 524 and 1141 of the Bankruptcy Code. Upon the Effective Date, the injunction provided in Article X.F of the Plan shall apply. Notwithstanding anything to the contrary in this paragraph, nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security

16

agreements, leases, mortgages, trust agreements and bills of sale) or the taking of such other actions as are necessary or appropriate to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

8.    Corporate Existence.    Subject to the Restructuring Transactions permitted by paragraph 12 of this Confirmation Order, the Reorganized Debtor shall continue to exist as a legal Entity in accordance with the laws of the State of Texas and pursuant to its certificates or articles of incorporation and by-laws, or other applicable organizational documents, as the same were in effect immediately prior to the Effective Date except to the extent such certificates or articles of incorporation and by-laws, or other applicable organizational documents, are amended, restated or otherwise modified under or pursuant to the Plan or the Plan Supplement.

9.    Vesting of Assets in the Reorganized Debtor Free and Clear of Liens and Claims. Except as otherwise expressly provided in the Plan, this Confirmation Order, or any Restructuring Document, pursuant to sections 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, all property and assets of the Debtor, and all claims, rights, and Causes of Action of the Debtor, shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, and other encumbrances, subject only to the Restructuring Transactions.    On and after the Effective Date, the Reorganized Debtor may (i) operate its business, (ii) use, acquire, and dispose of property and (iii) compromise or settle any Claims, without notice to, supervision of or approval by the Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or this Confirmation Order.

10.    Release of Liens.    To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any liens or security interests to secure such Holder's Secured Claim, then as

4831-5137-5065.3

soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtor or the Reorganized Debtor that are necessary to release or extinguish such liens and security interests.

11.     <u>Release of Liens and Claims</u>.  Pursuant to section 1141(c) of the Bankruptcy Code, except as otherwise expressly provided in the Plan (including, without limitation, <u>Article VI.I</u> of the Plan), all Liens, Claims, mortgages, deeds of trust, or other security interests against the assets or property of the Debtor or the Estate shall be fully released, canceled, terminated, extinguished, and discharged, without further notice to or order of the Court  The filing of this Confirmation Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, Claims and other interests to the extent provided in the immediately preceding sentence.  Any Person or Entity holding such Liens, Claims or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtor such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtor.

12.     <u>Restructuring Transactions</u>.  The Debtor and if applicable, the Reorganized Debtor is authorized to consummate the Restructuring Transactions described in <u>Article VI.B</u> of the Plan, subject to the terms and conditions set forth therein

13.     <u>Discharge of the Debtor</u>.  Pursuant to section 1141(d)(1)(A), except as otherwise expressly provided by the Plan or this Confirmation Order, , all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Equity Interests, and Causes of Action of any kind or nature whatsoever against the Debtor or any of its assets or properties,.  All Entities shall be precluded from asserting against the

Debtor, the Estate, the Reorganized Debtor, each of their respective successors and assigns, and each of their respective assets and properties, any such Claims, Equity Interests, or Causes of Action. Such discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

14.    <u>Releases</u>.  The release provisions contained in the Plan, including, but not limited to, those provided in <u>Article X</u> of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein. The releases are found to be consensual, for consideration, fair and equitable, and in the best interest of the Estate.

15.    <u>Injunctions</u>.  The injunctions contained in the Plan, including, but not limited to, those provided in <u>Article X.F</u> of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein. Except as otherwise expressly provided in the Plan or this Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (i) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind; or (iv) asserting a setoff or right of subrogation or recoupment of any kind, on account of, or with respect to, any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be released, settled or to be settled, or discharged or to be discharged pursuant to the Plan or this Confirmation Order against any person or entity so released or discharged (or the property or estate of any person or entity so released or discharged).

4831-5137-5065.3

16.     <u>Contracts and Leases Generally</u>.  The Debtor has exercised reasonable business judgment in determining whether to assume or reject each of the Executory Contracts and Unexpired Leases as set forth within the Plan, this Confirmation Order or otherwise.

17.     <u>Approval of Rejection of Rejected Contracts</u>.  Except as otherwise provided in <u>Article VII</u> of the Plan, all executory contracts and unexpired leases (collectively, the "<u>Rejected Contracts</u>") are rejected by the Debtor as of the Effective Date.  Any Claims arising from Rejected Contracts pursuant to the Plan or this Confirmation Order, if any, must be filed with this Court within thirty (30) days after entry of an order of this Court (including this Confirmation Order) approving such rejection (such Claims, the "<u>Rejection Claims</u>").  Any Person or Entity that is required to file a Rejection Claim that fails to timely do so shall be forever barred, estopped, and enjoined from asserting such Claim, with prejudice.  All such Rejection Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in <u>Article X.F</u> of the Plan.

18.     <u>Corporate Action</u>.  The Debtor and the Reorganized Debtor may take any and all actions to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and this Order without any further action or need for any further authorization.

19.     <u>Exemption From Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan, this Confirmation Order, or the Restructuring Documents shall not be subject to any stamp or similar tax or governmental assessment in the United States or by any other Governmental Unit, and this Court hereby directs the appropriate federal, state, or local (domestic or foreign) governmental officials or agents to

forgo the collection of any such stamp or similar tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such stamp or similar tax or governmental assessment.

20. <u>Filing and Recording</u>.  This Confirmation Order (a) is and shall be effective as a determination that, except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all Claims existing prior to such date have been unconditionally released, discharged, and terminated and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and any other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp or similar tax or governmental assessment imposed by state or local law.

21. <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan.

22. <u>Professional Fee Claims</u>.  Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve an application for

21

final allowance of such Professional Fee Claim (each, a "Final Fee Application") no later than thirty (30) calendar days following the Effective Date (the "Professional Fees Bar Date"); *provided* that the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date, including those reasonable and documented fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to, or order of, the Court.

23.     Service of Final Fee Applications.  All Final Fee Applications of Professionals shall be filed with this Court and actually served on or prior to the Professional Fees Bar Date upon the following parties (collectively, the "Notice Parties"): (i) co-counsel to the Debtor, Gray Reed, 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056, Attn: Jason S. Brookner (jbrookner@grayreed.com), Lydia R. Webb (lwebb@grayreed.com), and Levene Neale Bender Yoo & Brill L.L.P., David B. Golubchik (DBG@lnbyb.com), and Eve H. Karasik (EHK@lnbyb.com), and (ii) the Office of the United States Trustee, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Hector Duran (hector.duran.jr@usdoj.gov).

24.     Objections to Professional Fee Claims.  Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtor, the Professional in question and the Notice Parties by no later than twenty-one (21) calendar days after the filing of the applicable Final Fee Application (the "Professional Fees Objection Deadline"), with proof of service thereof filed as and when required by the Bankruptcy Local Rules of this Court.  Only those objections made in writing and timely filed and received by the Professional Fees Objection Deadline will be considered by this Court.  If no objection to a Final Fee Application is timely filed and served in accordance with the procedures set forth herein, then this Court may enter a Final Order approving such uncontested Final Fee Application without further notice and the Debtor or the Reorganized

Debtor, as applicable, shall promptly pay the amounts described in such uncontested Final Fee Application (or if any Final Fee Application is the subject of an objection, the Debtor or the Reorganized Debtor, as applicable, shall pay the undisputed amounts described in such Final Fee Application on an interim basis).

25.     <u>Payment of Statutory Fees</u>.  All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code shall be paid on or before the Effective Date.  Any such fees that become due and payable after the Effective Date shall be paid by the Reorganized Debtor until the Chapter 11 Case is closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The Debtor shall file monthly reports in a form reasonably acceptable to the U.S. Trustee before the Effective Date. On and after the Effective Date, the Reorganized Debtor shall file quarterly reports in a form reasonably acceptable to the U.S. Trustee.

26.     <u>Notice of Confirmed Plan and Effective Date</u>.  Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Reorganized Debtor shall, within three (3) Business Days after the Effective Date or as soon as reasonably practicable thereafter, (i) file notice of entry of this Confirmation Order and the Effective Date in substantially the form annexed here as **<u>Exhibit 2</u>**, and (ii) cause the same via electronic mail or fist class U.S. mail on all known creditors, equity security holders, the U.S. Trustee and other parties-in-interest in the Chapter 11 Case. Such notice is adequate under the circumstances and no other or further notice is necessary.

27.     <u>Solicitation</u>.   Due to a lack of impaired classes, the Debtor and the Reorganized Debtor were not required to solicit votes on the Plan.

28.     <u>Non-Debtor Liability to Governmental Unit</u>. Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins any liability to a Governmental Unit on the part

4831-5137-5065.3

of any non-Debtor. Nothing in this Confirmation Order or the Plan shall affect any valid right of setoff or recoupment of any Governmental Unit.

29.     <u>Retention of Jurisdiction</u>.   Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court shall, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, and the Plan as legally permissible, including, among other things, jurisdiction over the matters set forth in <u>Article XI</u> of the Plan. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Confirmation Order.

30.     <u>No Admission or Waiver</u>. None of the filing of the Plan, any statement or provision contained within the Plan or the taking of any action by the Debtor with respect to the Plan (and the Plan Supplement), the Disclosure Statement or this Confirmation Order shall be or shall be deemed to be an admission or waiver of any rights of the Debtor.

31.     <u>Confirmation Order Controlling</u>.   The provisions of the Plan, the Plan Supplement, any Restructuring Documents, and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however,* that in the event of any conflict, the terms of this Confirmation Order shall control and govern.

32.     <u>No Stay</u>. Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order are immediately effective and enforceable upon its entry.

**Signed:  February 23, 2021.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

24

**<u>Exhibit 1</u>**

**Plan of Reorganization**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | |
| | § | Chapter 11 |
| MARSHALL BROADCASTING GROUP, INC.,[1] | § § | Case No. 19-36743 (DRJ) |
| Debtor. | § § § | |

**DEBTOR'S COMBINED DISCLOSURE STATEMENT
AND CHAPTER 11 PLAN**

Jason S. Brookner (TX Bar No. 24033684)
Lydia R. Webb (TX Bar No. 24083758)
**GRAY REED**
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com
      lwebb@grayreed.com

David B. Golubchik (*pro hac vice*)
Eve H. Karasik (*pro hac vice*)
**LEVENE NEALE BENDER YOO
   & BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dbg@lnbyb.com
     ehk@lnbyb.com

**CO-COUNSEL TO THE DEBTOR**

Dated: January 29, 2021

---

[1] The last four digits of the Debtor's federal tax identification number are (7805).

i

THE DEBTOR IS PROVIDING THE INFORMATION IN THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN (THIS "DISCLOSURE STATEMENT" OR "PLAN," AS APPLICABLE) TO NOTIFY CERTAIN HOLDERS OF CLAIMS THAT THEY MAY BE ENTITLED TO FULL PAYMENT FOR THEIR CLAIM AND WILL THEREFORE BE DEEMED TO ACCEPT THE DEBTOR'S PLAN.  HOLDERS OF CLAIMS SHOULD CAREFULLY REVIEW THIS DISCLOSURE STATEMENT BEFORE THE PLAN OBJECTION DEADLINE.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

THE DEBTOR URGES EACH HOLDER OF A CLAIM OR AN INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND ALL OF THE ACTIONS NECESSARY TO EFFECTUATE THE PLAN.  FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE PLAN.

THIS DISCLOSURE STATEMENT DISCUSSES, AMONG OTHER THINGS, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE INCORPORATED BY REFERENCE HEREIN.  ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.  FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR'S MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.  THE DEBTOR DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3016(B) AND THE PROCEDURES FOR COMPLEX CASES IN THE SOUTHERN DISTRICT OF TEXAS (EFFECTIVE AUGUST 7, 2020), AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS FORWARD-LOOKING STATEMENTS WITHIN THE MEANING OF SECTION 27A AND SECTION 21E OF THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "<u>SECURITIES ACT</u>"). SUCH STATEMENTS MAY CONTAIN WORDS SUCH AS "MAY," "WILL," "MIGHT," "EXPECT," "BELIEVE," "ANTICIPATE," "COULD," "WOULD," "ESTIMATE," "CONTINUE," "PURSUE," OR THE NEGATIVE THEREOF OR COMPARABLE TERMINOLOGY, AND MAY INCLUDE, WITHOUT LIMITATION, INFORMATION REGARDING THE DEBTOR'S EXPECTATIONS WITH RESPECT TO FUTURE EVENTS. FORWARD-LOOKING STATEMENTS ARE INHERENTLY UNCERTAIN AND ARE SUBJECT TO CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL RESULTS TO DIFFER FROM THOSE EXPRESSED OR IMPLIED IN THIS DISCLOSURE STATEMENT AND THE FORWARD-LOOKING STATEMENTS CONTAINED HEREIN. <u>MAKING INVESTMENT DECISIONS BASED ON THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND/OR THE PLAN IS, THEREFORE, SPECULATIVE.</u>

IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTOR RELIED ON FINANCIAL DATA DERIVED FROM ITS BOOKS AND RECORDS OR THAT WAS OTHERWISE MADE AVAILABLE TO IT AT THE TIME OF SUCH PREPARATION AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTOR'S BUSINESS. ALTHOUGH THE DEBTOR BELIEVES THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTOR AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTOR'S BUSINESS. THE DEBTOR EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. THE DEBTOR MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THIS DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THE DEBTOR IS MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO, AND EXPRESSLY DISCLAIMS ANY DUTY TO PUBLICLY UPDATE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED. THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED PLAN AND RELATED AMENDED

DISCLOSURE STATEMENT FROM TIME TO TIME, SUBJECT TO THE TERMS OF THE PLAN.

CONFIRMATION AND CONSUMMATION OF THE PLAN ARE SUBJECT TO CERTAIN CONDITIONS PRECEDENT DESCRIBED IN ARTICLE XI HEREOF.  THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED OR, IF CONFIRMED, THAT SUCHCONDITIONS PRECEDENT WILL BE SATISFIED OR WAIVED.  YOU ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY.

THE DEBTOR HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF ITS PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS WILL BE BOUND BY THE TERMS OF THE PLAN AND ANY TRANSACTIONS CONTEMPLATED THEREBY.

# TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** .................................................................................................**1**
    A.    Defined Terms ..................................................................................................1
    B.    Rules of Interpretation .....................................................................................9
    C.    Computation of Time ......................................................................................10
    D.    Governing Law ...............................................................................................10
    E.    Reference to Monetary Figures .......................................................................10
    F.    Controlling Document .....................................................................................10

**ARTICLE II. BACKGROUND AND DISCLOSURES** ...........................................................**10**
    A.    Prepetition Debt Obligations, Creditor Relationships, and Sale Efforts ...........11
    B.    Events During the Chapter 11 Case ..................................................................13

**ARTICLE III. ADMINISTRATIVE AND PRIORITY CLAIMS** ........................................**16**
    A.    Treatment of Administrative Claims and Priority Claims ................................16
    B.    Time for Filing of Administrative Claims ........................................................16
    C.    Professional Fee Claims ..................................................................................16
    D.    U.S. Trustee Statutory Fees ............................................................................17

**ARTICLE IV. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND EQUITY INTERESTS** ......................................................................................................**17**
    A.    Summary of Classifications .............................................................................17
    B.    Treatment of Classes of Claims and Equity Interests .......................................17
    C.    Special Provision Governing Unimpaired Claims ...........................................19
    D.    Elimination of Vacant Classes ........................................................................20
    E.    Presumed Acceptance by Non-Voting Classes ................................................20
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ...................20
    G.    Controversy Concerning Impairment ..............................................................20
    H.    Subordinated Claims .......................................................................................20
    I.    Plan Objection Deadline ..................................................................................20

**ARTICLE V. CONFIRMATION OF THE PLAN** ...............................................................**21**
    A.    Combined Hearing ..........................................................................................21
    B.    Requirements for Confirmation of the Plan .....................................................21
    C.    Best Interests of Creditors ...............................................................................22
    D.    Feasibility .......................................................................................................22
    E.    Acceptance by Impaired Classes .....................................................................22

**ARTICLE VI. MEANS FOR IMPLEMENTATION OF THE PLAN** ..................................**23**
    A.    Post-Confirmation Management ......................................................................23
    B.    Restructuring Transactions ..............................................................................23
    C.    Sources of Consideration for Plan Distributions ..............................................23
    D.    General Settlement of Claims ..........................................................................25
    E.    Reorganized Debtor ........................................................................................25
    F.    Vesting of Assets in the Reorganized Debtor Free and Clear of Liens and Claims ...........26
    G.    Cancellation of Notes, Certificates, Securities, and Instruments ......................26
    H.    Corporate Action .............................................................................................26
    I.    Release of Liens ..............................................................................................27
    J.    Effectuating Documents; Further Transactions ...............................................27
    K.    Exemption from Certain Taxes and Fees ..........................................................27

**ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .....................**28**
    A.    Assumption and Assignment of Executory Contracts and Unexpired Leases ...................28

| | | |
|---|---|---|
| B. | Claims Based on Rejection of Executory Contracts and Unexpired Leases | 28 |
| C. | Inclusiveness | 28 |
| D. | Indemnification Obligations | 29 |
| E. | Reservation of Rights | 29 |
| F. | Nonoccurrence of Effective Date | 29 |

**ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS ............................................29**

| | | |
|---|---|---|
| A. | Timing and Calculation of Amounts to Be Distributed | 29 |
| B. | Rights and Powers of the Debtor and Reorganized Debtor | 30 |
| C. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 30 |
| D. | Compliance with Tax Requirements/Allocations | 31 |
| E. | Setoffs and Recoupment | 31 |
| F. | Claims Paid or Payable by Third Parties | 32 |

**ARTICLE IX. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND EQUITY INTERESTS ............................................33**

| | | |
|---|---|---|
| A. | Allowance of Claims and Equity Interests | 33 |
| B. | Objections to Claims and Equity Interests | 33 |
| C. | Estimation of Claims | 33 |
| D. | Adjustment to Claims Register Without Objection | 34 |
| E. | Time to File Objections to Claims | 34 |
| F. | Disallowance of Claims | 34 |
| G. | Amendments to Claims | 34 |
| H. | No Distributions Pending Allowance | 34 |
| I. | Distributions After Allowance | 35 |
| J. | Single Satisfaction of Claims | 35 |

**ARTICLE X. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS.................35**

| | | |
|---|---|---|
| A. | Compromise and Settlement of Claims, Equity Interests, and Controversies | 35 |
| B. | Term of Injunctions or Stays | 35 |
| C. | **Release by the Debtor** | 35 |
| D. | **Third Party Release** | 36 |
| E. | **Exculpation** | 37 |
| F. | **Injunction** | 38 |
| G. | Recoupment | 39 |
| H. | Subordination Rights | 39 |

**ARTICLE XI. SUBSTANTIAL CONSUMMATION OF THE PLAN ............................................39**

| | | |
|---|---|---|
| A. | Conditions Precedent to Consummation of the Plan | 39 |
| B. | Waiver of Conditions | 40 |
| C. | Substantial Consummation | 40 |
| D. | Effect of Non-Occurrence of Conditions to the Effective Date | 40 |

**ARTICLE XII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..................40**

| | | |
|---|---|---|
| A. | Modification and Amendments | 40 |
| B. | Revocation or Withdrawal of the Plan | 40 |

**ARTICLE XIII. RETENTION OF JURISDICTION ............................................41**

**ARTICLE XIV. CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............................................42**

| | | |
|---|---|---|
| A. | Introduction | 42 |
| B. | Certain U.S. Federal Income Tax Consequences to the Debtor | 43 |
| C. | Certain U.S. Federal Income Tax Consequences to Certain U.S. Holders of Claims | 44 |
| D. | Information Reporting and Back-Up Withholding | 46 |
| E. | No Legal or Tax Advice Is Provided to You by this Disclosure Statement | 47 |

4849-0454-4983.1

**ARTICLE XV. MISCELLANEOUS PROVISIONS**................................................................**47**
    A.    Immediate Binding Effect..............................................................47
    B.    Additional Documents...................................................................47
    C.    Reservation of Rights...................................................................47
    D.    Successors and Assigns................................................................47
    E.    Service of Documents...................................................................48
    F.    Entire Agreement.........................................................................48
    G.    Nonseverability of Plan Provisions..............................................48
    H.    Waiver or Estoppel......................................................................49

4849-0454-4983.1

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.      *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*Administrative Claim*" means a Claim for the costs and expenses of administration of the Estate entitled to priority under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the businesses of the Debtor; and (b) Allowed Professional Fee Claims in the Chapter 11 Case.

2.      "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

3.      "*Adversary Proceeding*" means the adversary proceeding styled *Marshall Broadcasting Group, Inc. v. Nexstar Broadcasting, Inc.*, Adversary No. 20-03074, commenced in the Bankruptcy Court on March 31, 2020, and closed on November 24, 2020.

4.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.      "*Allowed*" means:  (a) any Claim, proof of which is timely Filed by the Bar Date; (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order; *provided, further,* that the Reorganized Debtor may affirmatively determine to deem Allowed any General Unsecured Claim described in clause (a) notwithstanding the fact that the period within which an objection may be interposed has not yet expired.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor, as applicable.  For the avoidance of doubt, except as provided herein or otherwise agreed, no Entity may File a Proof of Claim after the Claims Bar Date without further order of the Bankruptcy Court.  "Allow" and "Allowing" shall have correlative meanings.

6.      "*APA*" means the Asset Purchase Agreement for the Sale of Television-Related Assets KMSS-TV, Shreveport, Louisiana, KPEJ-TV, Odessa, Texas, KLJB, Davenport, Iowa,

1

executed on March 30, 2020, between Marshall Broadcasting Group, Inc. and Mission Broadcasting, Inc.

7.     "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws, including, without limitation, all preference, fraudulent transfer, fraudulent conveyance and/or similar avoidance claims, rights and causes of action whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

8.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as the same may be amended from time to time.

9.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or any other court of the United States having jurisdiction over the Chapter 11 Case.

10.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

11.    "*Bar Date*" means the last date to file a Proof of Claim against the Debtor, which was April 20, 2020 for all creditors except Governmental Units, and June 9, 2020 for Governmental Units.

12.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

13.    "*Cash*" means the legal tender of the United States or the equivalent thereof.

14.    "*Cash Collateral Orders*" means each of the Orders (whether interim or final) approving the Debtor's use of cash collateral [Docket Nos. 44, 79, 107, 222, 224, 344].

15.    "*Causes of Action*" means, subject to the releases, exculpations, and injunctions set forth in the Plan, any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, aside from those expressly disclaimed, waived, or released in the APA or Settlement Agreement, and which was property of the Debtor or in which the Debtor held rights as of the Effective Date.

16. "*Chapter 11 Case*" means the chapter 11 case commenced by the Debtor on the Petition Date and styled *In re Marshall Broadcasting Group, Inc.*, Case No. 19-36743, which is currently pending before the Bankruptcy Court.

17. "*Charter Documents*" means the articles or certificate of incorporation and the bylaws of the Debtor or Reorganized Debtor, as applicable, and any amendments thereto.

18. "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

19. "*Claims Objection Deadline*" means the date that is one hundred eighty days (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion by the Reorganized Debtor.

20. "*Claims Register*" means the official register of Claims maintained by the Debtor.

21. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article IV hereof pursuant to section 1122(a) of the Bankruptcy Code.

22. "*Combined Hearing*" means the hearing held by the Bankruptcy Court to consider final approval of the Disclosure Statement and Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, which hearing is currently scheduled to commence on <u>February 23, 2021</u>, <u>at 1:00 p.m.</u>, prevailing Central Time, as may be extended or continued from time to time.

23. "*Conditional Approval Order*" means the Order conditionally approving the Disclosure Statement and approving the notice procedures and Plan Objection Deadline.

24. "*Confirmation Date*" means the date upon which the Confirmation Order is entered on the Bankruptcy Court's docket.

25. "*Confirmation Hearing*" means the Combined Hearing, as it relates to Confirmation of the Plan.

26. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27. "*Consummation*" means the occurrence of the Effective Date.

28. "*Credit Agreement*" means the Credit Agreement, dated as of January 17, 2017 (as amended, restated, supplemented, and/or otherwise modified in writing from time to time, including pursuant to Amendment No. 1 to Credit Agreement, dated as of July 19, 2017, and Amendment No. 2 to Credit Agreement, dated as of June 28, 2018) entered into between the Debtor and certain lenders, including Bank of America as administrative and collateral agent.

29. "*Debtor*" means MBG in its capacity as a debtor and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

30. "*Disallowed*" means, with respect to any Claim, or any portion thereof, that such Claim, or any portion thereof, is not Allowed.

31.     "*Disbursing Agent*" means the party responsible for making distributions under the Plan, who shall be (a) the Reorganized Debtor or (b) such other party or parties who may be designated by the Bankruptcy Court upon motion.

32.     "*Disputed*" means, with respect to any Claim, any Claim that is not yet Allowed.

33.     "*Distribution*" means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agent, as applicable under this Plan.

34.     "*Distribution Date*" means the date, occurring on or as soon as practicable after the Effective Date, on which the Disbursing Agent first makes distributions to holders of Allowed Claims and Allowed Equity Interests as provided in the Plan.

35.     "*Distribution Record Date*" means the record date for purposes of receiving distributions under the Plan on account of Allowed Claims and Allowed Equity Interests, which shall be the Confirmation Date.

36.     "*Effective Date*" means the later of the date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the effectiveness of the Plan specified in Article XI.A hereof have been satisfied or waived. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

37.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

38.     "*Equity Interest*" means any "equity security" of the Debtor, as such term is defined in section 101(16) of the Bankruptcy Code.

39.     "*Estate*" means the estate of the Debtor, as created pursuant to section 541 of the Bankruptcy Code.

40.     "*Exculpated Parties*" means, collectively:   (a) the Debtor; (b) the Independent Director; (c) the Debtor's current officers, directors, and managers; and (d) Gray Reed & McGraw, LLP; Levene, Neale, Bender, Yoo & Brill L.L.P.; Allan G. Moskowitz Esq.; Fletcher, Heald & Hildreth, P.L.C.; Lain, Faulkner & Co., P.C.; Loeb & Loeb LLP; Boies Schiller Flexner LLP; and PVB Advisors LLC.

41.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 of the Bankruptcy Code.

42.     "*FCC Complaint*" means that certain complaint filed by MBG with the Federal Communications Commission on June 12, 2019, as amended on September 6, 2019, and as further amended on July 7, 2020.

43.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, which was 1.57%.

44.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Debtor.

45. "*Final Order*" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court (or the clerk of such other court) on the docket in the Chapter 11 Case, which has not been reversed, stayed, modified, amended, or vacated, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with rule 8002 of the Bankruptcy Rules; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

46. "*General Unsecured Claim*" means any Claim against the Debtor that is not: (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) an Other Secured Claim; or (f) an Equity Interest.

47. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

48. "*Guarantee*" means that certain Guarantee and Security Agreement dated as of January 17, 2017, by and among Nexstar Broadcasting, Inc., Nexstar Digital LLC, and Yashi, Inc., guaranteeing MBG's obligations under the Credit Agreement.

49. "*Guarantee Designation Agreement*" means that certain Guarantee Designation Agreement by and between Mission and Nexstar, dated November 27, 2019.

50. "*Holder*" means any Entity holding a Claim or an Equity Interest.

51. "*Impaired*" means, with respect to a Claim or Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

52. "*Indemnification Provisions*" means the Debtor's indemnification provisions currently in place as of the Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, for its current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtor, as applicable, and such parties' respective Affiliates.

53. "*Independent Director*" means Drew McManigle, in his capacity as the Debtor's independent director, having been appointed to such position pursuant to the *Final Order (I) Authorizing the Debtor to Use Cash Collateral, (II) Granting Certain protections to Prepetition Lender, and (III) Modifying the Automatic Stay* [Docket No. 107].

4849-0454-4983.1

54.    "*Interim Compensation Order*" means the Bankruptcy Court's *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals*, entered on February 11, 2020 [Docket No. 148].

55.    "*JSAs*" means those Joint Sales Agreements entered into between MBG and Nexstar regarding the operation of the Stations, and all subsequent amendments thereto.

56.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

57.    "*Litigation*" means, collectively, the Adversary Proceeding, the New York Action, and the FCC Complaint.

58.    "*Loan Documents*" means, collectively, the Credit Agreement, the Guarantee, the Guarantee Designation Agreement, and any amendments, supplements, or related documents thereto.

59.    "*Local Bankruptcy Rules*" means the Bankruptcy Local Rules for the Southern District of Texas, as the same may be amended or modified from time to time.

60.    "*MBG*" means Marshall Broadcasting Group, Inc.

61.    "*Mission*" means Mission Broadcasting, Inc.

62.    "*New York Action*" means the action filed in the Supreme Court of the State of New York, captioned *Marshall Broadcasting Group, Inc. v. Nexstar Broadcasting, Inc.*, Index No. 651943/2019, and all related appeals.

63.    "*Nexstar*" means Nexstar Inc., formerly known as Nexstar Broadcasting, Inc.

64.    "*Notice Procedures*" means those procedures approved by the Court in the Conditional Approval Order for notice to all Holders of Claims and setting the Plan Objection Deadline.

65.    "*Other Priority Claim*" means a Claim asserting a priority described in section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; (b) a Professional Fee Claim; or (c) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Case.

66.    "*Other Secured Claim*" means any Secured Claim that was not released under the terms of the APA or Settlement Agreement.

67.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

68.    "*Petition Date*" means December 3, 2019, the date on which the Debtor commenced the Chapter 11 Case.

69. "*Plan Objection Deadline*" means <u>February 16, 2021</u> and is the final date by which all objections to confirmation of the Plan must actually be filed with the Bankruptcy Court and served on the Debtor, as set forth in the Conditional Approval Order.

70. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed at least 7 days prior to the Plan Objection Deadline (as defined herein), as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including: (a) the amended Charter Documents.

71. "*Pledge Agreement*" means the Pledge Agreement dated as of January 17, 2017, entered between the Debtor and Bank of America, related to Debtor's performance under the Credit Agreement.

72. "*Priority Claims*" means, collectively the Priority Tax Claims and Other Priority Claims.

73. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

74. "*Professional*" means any Entity retained, or to be compensated by, the Debtor, pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code.

75. "*Professional Fee Claim*" means a Claim by a Professional for allowance of compensation and reimbursement of expenses in the Chapter 11 Case under sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code from the Petition Date through and including the Effective Date, to the extent not previously paid pursuant to the Interim Compensation Order or other order of the Bankruptcy Court, and regardless of whether a monthly fee statement or interim fee application has previously been Filed.

76. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

77. "*Released Parties*" means: (a) the Debtor; (b) the Independent Director; (c) Mission; (d) all Holders of Claims or Equity Interests; and (e) each of their respective current and former officers, directors, managers, officers, principals, members, employees, agents, attorneys, accountants, and representatives.

78. "*Releasing Parties*" means: (a) the Released Parties; and (b) all Holders of Claims or Equity Interests who do not affirmatively opt out of the releases set forth in Article X hereof on the Release Opt Out Form.

79. "*Release Opt Out Form*" means the form provided to all Holders of Claims and Equity Interests on which such holders may elect to opt out of the releases set forth in Article X hereof.

80. "*Reorganized Debtor*" means the Debtor, on and after the Effective Date.

81.    "*Restructuring Transactions*" means the transactions described in Article VI.AB hereof.

82.    "*Retained Causes of Action*" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or the Estate may hold against any Entity, including (a) [reserved]; (b) claims and causes of action brought prior to the Effective Date, (c) claims and causes of action against any Entities for failure to pay for products or services provided or rendered by the Debtor, (d) claims and causes of action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, including claims against third parties for infringement of any such intellectual property rights or other misuse of such intellectual property, and (e) claims and causes of action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in connection with the Debtor's business, including claim overpayments and tax refunds; *provided* that the Retained Causes of Action shall not include any Causes of Action settled, released, or exculpated under the Plan, APA, or Settlement Agreement.

83.    "*Sale*" or "*Sale Transaction*" means the sale of the Debtor's assets to Mission pursuant to the terms of the APA.

84.    "*Sale Order*" means the order of the Bankruptcy Court approving the Sale Transaction [Docket No. 235].

85.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

86.    "*Secured Claim*" means a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan or a Final Order as a Secured Claim.

87.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

88.    "*Settlement Agreement*" means that certain settlement agreement by and among the Debtor and the parties thereto attached as Exhibit 1 to the *Debtor's Emergency Motion for Entry of an Order (I) Authorizing and Approving the Settlement By and Among the Debtor and the Parties to the Settlement Agreement and (II) Granting Related Relief* [Docket No. 372].

89.    "*Settlement Order*" means the Bankruptcy Court's order approving the Settlement Agreement [Docket No. 375].

4849-0454-4983.1

90.    "*SSAs*" means those certain Shared Services Agreements entered into between MBG and Nexstar regarding the operation of the Stations, and all subsequent amendments thereto.

91.    "*Stations*" means, collectively, KPEJ-TV in Odessa, Texas ("<u>KPEJ</u>"); KMSS-TV in Shreveport, Louisiana ("<u>KMSS</u>"); and KLJB in Davenport, Iowa ("<u>KLJB</u>").

92.    "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

93.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

94.    "*Wind Down Budget*" means the funds provided for under the APA and set forth in the Sale Order for the payment of certain accrued and unpaid allowed expenses of the Debtor incurred after the Sale Transaction.

B.    *Rules of Interpretation*

Unless otherwise specified herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan; (4) all references to "section," "Article" or "exhibit" herein are references to the respective section in, article or, and exhibit to, this Combined Disclosure Statement and Chapter 11 Plan; (5) the words "herein," "hereof," and ''hereto'' refer to this Combined Disclosure Statement and Chapter 11 Plan in its entirety rather than to a particular portion hereof; (6) all captions and headings in this Combined Disclosure Statement and Chapter 11 Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) any docket number references herein shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Case; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) any immaterial effectuating provisions may be interpreted by the Debtor or the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (13) any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (14) any reference to an Entity as a holder of a Claim or Equity

Interest includes that Entity's successors and assigns; and (15) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules.

C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent the Plan or an exhibit to the Plan provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to principles of conflict of laws that would require application of the laws of another jurisdiction.

E.    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States, unless otherwise expressly provided in the Plan.

F.    Controlling Document

In the event of an inconsistency herein between the Plan portion and the Disclosure Statement portion, the terms of the Plan shall control in all respects. In the event of any inconsistency between the Plan and the Plan Supplement, the Plan will control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control. To the extent, however, either the Plan or Confirmation Order, on the one hand, is inconsistent with either the Settlement Agreement or the Settlement Order, on the other hand, the Settlement Agreement or the Settlement Order, as applicable, shall control.

## ARTICLE II.

## BACKGROUND AND DISCLOSURES

MBG is a Texas corporation that, prior to the closing of the Sale, owned and operated three television stations: KPEJ in Odessa, Texas; KMSS in Shreveport, Louisiana; and KLJB in Davenport, Iowa. MBG was formed by its owner and sole shareholder, Pluria Marshall, Jr. ("Mr. Marshall"), for the purpose of acquiring the Stations from Nexstar. The Stations were purchased from Nexstar for approximately $43.3 million.

MBG is a small, minority-owned company that provided programming through its affiliation agreements with FOX Broadcasting Corporation in all markets. Between 2014, when the Stations were acquired, and the Petition Date, MBG operated the Stations, including producing

local news content and selling advertising. As of the Petition Date, MBG had 22 full-time employees, comprised of sales and technical personnel, across all markets.

In connection with his operation of the Stations, Mr. Marshall has been exploring the future of broadcast through digital distribution (streaming). In addition, Mr. Marshall has gained experience and a level of expertise in alternative forms of gaming models, including such things as E-sports, where multi-sport competitions are carried out through a digital platform akin to a video game. This form of sports and entertainment has gained a heightened level of demand during the current COVID-19 pandemic. Following the Effective Date, the Reorganized Debtor intends to capitalize on the foregoing through digital content creation, distribution and event creation. The business model is currently in the concept phase and creation and, at this time, it is impractical to provide definitive milestones to be achieved. The Reorganized Debtor's intent, after satisfying all Allowed Claims in full, is to pursue further exploration and development of the foregoing model.

A.   *Prepetition Debt Obligations, Creditor Relationships, and Sale Efforts*

1.   The Debtor's Prepetition Debt

As of the Petition Date, the Debtor had approximately $66 million in total debt, as set forth below and in the Schedules [Docket No. 92]:

| Debt | Approx. Principal Amount Outstanding |
|---|---|
| Prepetition Credit Agreement Obligations | $49,013,808.90 |
| Contested Obligations to Nexstar[2] | $14,036,445.06 |
| Priority Unsecured Claims | $8,025.00 |
| Other Non-Priority Unsecured Claims | $3,049,130.02 |
| **Total Debt** | **$66,107,408.98** |

2.   Prepetition Credit Agreement

On January 17, 2017, the Debtor entered into the Credit Agreement with certain lenders and Bank of America ("BofA") as administrative and collateral agent, which Credit Agreement refinanced a December 1, 2014 credit facility. The Credit Agreement was the subject of two amendments. The Debtor and BofA also entered into a Guarantee and Security Agreement and a Pledge Agreement on or about January 17, 2017.

Nexstar, along with Nexstar Digital LLC and Yashi, Inc. (the "Nexstar Guarantors") entered into the Guarantee, under which the Nexstar Guarantors guaranteed MBG's obligations

---

[2] The Debtor's contested obligations to Nexstar were the subject of the Litigation and were ultimately settled pursuant to the terms of the Settlement Agreement and the Settlement Order.

under Credit Agreement. The Nexstar Guarantors transferred the Guarantee to Mission pursuant to the Guarantee Designation Agreement.

### 3. MBG's Relationship with Nexstar

When MBG acquired the Stations from Nexstar, MBG entered into an SSA and a JSA for each Station. Under these agreements, Nexstar agreed to, *inter alia*, sell up to 15% of the Stations' advertising, and to conduct specific operational support for the Stations, including continuity, traffic support, and master control, in exchange for a fee.

Over time, MBG's relationship with Nexstar deteriorated, ultimately resulting in litigation. On or about April 3, 2019, MBG filed the New York Action. On November 20, 2019, Nexstar filed an Answer and Counterclaims in the New York Action, alleging certain counterclaims against MBG and third-party claims against Mr. Marshall in his individual capacity. After entry of an order granting in part Nexstar's motion to dismiss, both parties appealed the trial court's ruling to the New York State Appellate Division, First Department.

On June 12, 2019, MBG filed an initial complaint with the Federal Communications Commission ("FCC"), alleging that Nexstar had violated certain FCC rules and policies. On September 6, 2019, MBG amended its claims by a Supplement to Complaint. On July 7, 2020, MBG filed its Second Supplement to Complaint.

### 4. MBG's Pre-Petition Sale Efforts

In the months leading up to the Petition Date, MBG and its advisors held discussions with several buyers interested in acquiring the Stations. Significant interest was indicated, and MBG went so far as to negotiate and agree to terms with one buyer for an agreed purchase price of $67 million, with MBG retaining all of its cash and accounts receivable. One of the conditions to sale imposed by the proposed buyer, however, was that Nexstar would agree to terminate the existing JSAs and SSAs upon the closing of the sale transaction. Nexstar did not agree to termination and the proposed purchaser, therefore, declined to move forward with the transaction.

### 5. Events Leading to the Chapter 11 Case

The Debtor's obligations under the Credit Agreement, as amended, matured on November 29, 2019, and the debt was not paid by the Debtor at that time. On November 30, 2019, the Debtor's Board of Directors conducted a properly noticed board meeting and authorized the filing of this Chapter 11 Case, which took place on December 3, 2019.

On December 2, 2019, Mission (i) advised MBG that it had paid MBG's obligations under the Credit Agreement, with an asserted balance due of $49,013,808.90, (ii) alleged various events of default under the Credit Agreement, and (iii) alleged that as a result of paying the debt, Mission was subrogated under applicable law to the rights of the lenders under the Loan Documents. Mission appointed itself as replacement collateral agent at that time, and demanded immediate payment of the debt. Mission further asserted that, pursuant to the Pledge Agreement, (i) Mr. Marshall's rights as the sole shareholder in the Debtor had ceased and had vested with Mission, (ii) Mission had executed an irrevocable proxy appointing Mission as proxy to vote and to take

any other action on behalf of MBG, and (iii) Mission had taken steps to commence a public foreclosure sale under New York law.

Following the commencement of the Chapter 11 Case, as discussed more fully below, the Debtor worked with Mission to achieve the consensual use of cash collateral, and the Stations were ultimately sold to Mission as part of a comprehensive sale process.

**B.      *Events During the Chapter 11 Case***

1.      First and Second Day Relief

As stated above, the Debtor filed its chapter 11 petition on December 3, 2019. On that date and shortly thereafter, the Debtor filed certain motions and applications requesting various types of "first day" and "second day" relief. The relief granted enabled the Debtor to preserve value and efficiently administer the Chapter 11 Case, including, among other things: (a) an order authorizing the Debtor to use cash collateral during the Chapter 11 Case, and granting certain protections to Mission [Docket Nos. 15, 44, 79, 107, 222, 224, 344]; and (b) an order granting authority to, *inter alia*, pay employee wages, benefits and related obligations. [Docket No. 43].

2.      Retention of Chapter 11 Professionals

To assist the Debtor in carrying out its duties as a debtor in possession and to otherwise represent the Debtor's interests in the Chapter 11 Case, the Bankruptcy Court entered Final Orders authorizing the Debtor to retain and employ the following professionals: (a) Gray Reed & McGraw LLP, as co-counsel [Docket No. 111]; (b) Levene, Neale, Bender, Yoo & Brill L.L.P. as co-counsel [Docket No. 109]; (c) Allan G. Moskowitz, Esq. as Special FCC Counsel [Docket No. 150]; (d) Fletcher, Heald & Hildreth, P.L.C. as Special FCC Counsel [Docket No. 112]; (e) Lain, Faulkner & Co., P.C. as Accountants [Docket No. 179]; (f) Loeb & Loeb LLP as Special Corporate Counsel [Docket No. 163]; (g) Boies Schiller Flexner LLP as Special Litigation Counsel [Docket No. 149]; and (h) PVB Advisors LLC as Investment Bankers [Docket No. 122].

3.      Claims Bar Date

On December 12, 2019, the United States Trustee filed the Notice of Chapter 11 Bankruptcy Case, scheduling the meeting of creditors on January 21, 2020, and setting the Bar Date as (a) April 20, 2020 for all Entities other than Governmental Units, and (b) June 9, 2020 for Governmental Units [Docket No. 59].

On January 14, 2020, the Debtor filed its Schedules [Docket No. 92] pursuant to section 521 of the Bankruptcy Code. A summary of certain key financial information as of January 2020 is set forth below:[3]

---

[3] This summary is provided for reference only and is qualified in all respects by the Schedules.

Summary of Assets: $87,548,564.62

    Cash and Cash Equivalents: $4,150,000.00

    Accounts Receivables: $10,931,867.62

Summary of Liabilities: $66,107,408.98

    Secured Claims: $49,013,808.90

    Nonpriority Unsecured Claims: $17,085,575.08

A total of eight claims were filed in the claims register, in the total amount of $31,422,846.62.[4]

4. The Sale Transaction

On February 14, 2020, the Bankruptcy Court entered its *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof; and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No. 157] (the "Bid Procedures Order"). The bid deadline was set as March 17, 2020. Thereafter, MBG filed its *Notice of Stalking Horse Bidder* [Docket No. 158], identifying Allen Media Broadcasting Evansville, Inc. as the stalking horse bidder for substantially all of the Debtor's assets (*i.e.*, the Stations).

The Debtor filed with the Bankruptcy Court, and served upon the applicable non-Debtor counterparties, a *Notice of Executory Contracts and Unexpired Leases Subject to Possible Assumption and Assignment and Proposed Cure Amounts*, identifying, among other things, the cure amounts for each executory contract and unexpired lease [Docket No. 175] (as amended by Docket Nos. 176 and 177, collectively, the "Cure Notice"), in accordance with the Bid Procedures Order.

The Debtor received two bids by the bid deadline: one from the stalking horse bidder, and one from Mission. Based on the stalking horse bidder's noncompliance with certain provisions of the Bidding Procedures, the Debtor determined not to proceed with the stalking horse, and the Debtor, in accordance with the Bidding Procedures, cancelled the auction. [Docket No. 194]. On March 27, 2020, the Debtor filed its *Notice of Successful Bidder* [Docket No. 198], identifying Mission as the successful bidder. Mission's bid for substantially all of the Debtor's assets was a dollar-for-dollar credit bid in the amount of $49,013,808.90, plus the assumption of various liabilities, including cure amounts under the Executory Contracts and Unexpired Leases to be assumed and assigned to Mission. On March 30, 2020, MBG and Mission entered in to the APA, and on April 1, 2020, the Bankruptcy Court entered the Sale Order. The Purchased Assets, as defined in Section 2.1 of the APA, include the Stations, the FCC Authorizations for the Stations, all machinery, equipment, etc., used to operate the Stations, all books and records related the

---

[4] Several claims have since been withdrawn or amended, including those filed by the Internal Revenue Service, Nexstar, and the Texas Workforce Commission. *See* Claim Nos. 4, 7, 8.

Debtor's Business, all cash or cash equivalents, and all accounts receivable. The Sale to Mission closed on September 1, 2020.

### 5. The Adversary Proceeding

On March 31, 2020, MBG filed the Adversary Proceeding against Nexstar. On April 23, 2020, the Debtor filed its Amended Complaint [Docket No. 8]. On August 27, 2020, Nexstar filed an Answer and Counterclaims in the Adversary Proceeding, alleging certain counterclaims against MBG. [Adv. Docket No. 59].

On April 15, 2020, the Debtor filed its *Motion for Partial Summary Judgment with Respect to Count I (Turnover of Estate Property)* [Adv. Docket No. 7], to which Nexstar responded with its *Motion for Abstention or, in the Alternative, to Dismiss and Cross Motion for Partial Summary Judgment, and Opposition to Debtor's Motion for Partial Summary Judgment* [Adv. Docket No. 14] (the "Motion to Dismiss"). The Bankruptcy Court held a hearing on the parties' cross-motions for summary judgment on July 6, 2020, and denied both motions without prejudice. [Adv. Docket No. 31].

Thereafter, on August 13, 2020, the Bankruptcy Court conducted a hearing on Nexstar's Motion to Dismiss, which was granted in part and denied in part: Counts III, VI, VII, and IX of the Debtor's Complaint were dismissed, and Counts I, II, and VIII survived. [Adv. Docket No. 52].

On September 22, 2020, following demand by Nexstar, and a response thereto by the Debtor, Nexstar filed a motion for standing to assert certain alleged fraudulent transfer claims against Mr. Marshall in his individual capacity on behalf of MBG's estate (the "Motion for Authority") [Docket No. 362]. Nexstar agreed to extend the Debtor's time to respond to the Motion for Authority given that, at the time, the parties were in settlement negotiations. As set forth below, the parties were able to reach a settlement of all matters between them, rendering the Motion for Authority moot.

### 6. The Nexstar Settlement

After lengthy and extensive arm's-length negotiations, the Debtor and Nexstar reached a settlement of all matters between them, as memorialized in the Settlement Agreement. On November 6, 2020, the Debtor filed its *Emergency Motion for Entry of an Order (I) Authorizing and Approving the Settlement By and Among the Debtor and the Parties to the Settlement Agreement and (II) Granting Related Relief* [Docket No. 372]. The principal terms of the settlement called for (i) Nexstar to pay the Estate $2.25 million, (ii) full global releases between and among the Estate, Nexstar and Mr. Marshall, and (iii) a dismissal of all Litigation and all Claims filed by Nexstar, as well a withdrawal of the Motion for Authority.

On November 10, 2020, the Bankruptcy Court entered its *Order (I) Authorizing and Approving the Settlement By and Among the Debtor and the Parties to the Settlement Agreement and (II) Granting Related Relief* [Docket No. 375]. Thereafter, the settlement was consummated.

# ARTICLE III.

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, have not been classified and, thus, are excluded from the Classes of Claims and Equity Interests set forth in Article IV.

A.      *Treatment of Administrative Claims and Priority Claims*

Subject to the provisions of sections 327, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Allowed Administrative Claim in Cash on the Effective Date.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

B.      *Time for Filing of Administrative Claims*

All holders of Administrative Expense Claims, other than Professionals holding Professional Fee Claims, shall file with the Bankruptcy Court a request for payment of such Administrative Expense Claims within thirty (30) days after the Effective Date. Any such request must be served on the Reorganized Debtor and its counsel and must, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the basis for the Administrative Expense Claim. A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its holder forever barred from asserting such Administrative Expense Claim against the Debtor, the Reorganized Debtor or any other Person or Entity.

C.      *Professional Fee Claims*

1.    Final Fee Applications and Payment of Professional Fee Claims

Every Professional holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The last date to object to any final fee application shall be the twenty-first (21st) day after such fee application has been filed with the Bankruptcy Court. All final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtor.

4849-0454-4983.1

2.  Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtor may, in the ordinary course of business and without any further notice to, or action, order, or approval of the Bankruptcy Court, retain and pay professionals to represent the Reorganized Debtor.

D.      *U.S. Trustee Statutory Fees*

All fees payable under section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date.  Any such fees that become due and payable after the Effective Date shall be paid by the Reorganized Debtor.

# ARTICLE IV.

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND EQUITY INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in this Article IV.

A.      *Summary of Classifications*

All Claims and Equity Interests, other than Administrative Claims, Priority Claims, and Professional Fee Claims, are classified as set forth in this Article IV for all purposes, including voting, Confirmation, and distributions under the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that such Claim or Equity Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest in question fits within the description of such other Classes.  A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest, respectively, in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Equity Interests in the Debtor is as set forth below.  To the extent there are no Holders of Claims or Equity Interests in a particular Class or Classes, such Claims or Equity Interests shall be treated as set forth in Article IV.D.

| Class | Claims and Equity Interests | Status | Voting Rights |
|:---:|:---:|:---:|:---:|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

| Class | Claims and Equity Interests | Status | Voting Rights |
|-------|------------------------------|--------|---------------|
| 3 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4 | Equity Interests | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

B.     *Treatment of Classes of Claims and Equity Interests*

Except to the extent that the Debtor and the Holder of an Allowed Claim or Equity Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Equity Interest. Unless otherwise indicated, each Holder of an Allowed Claim or Equity Interest, as applicable, shall receive such treatment on the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, the timing of which shall be subject to the reasonable discretion of the Debtor.

1.   Class 1—Other Secured Claims

(a)   *Classification*: Class 1 consists of all Other Secured Claims, including all Secured Tax Claims, against the Debtor.

(b)   *Treatment*: Except to the extent that a Holder of an Allowed Class 1 Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Class 1 Claim, each such Holder shall receive, at the Reorganized Debtor's election:

(i)   payment in full in Cash of such Holder's Allowed Other Secured Claim;

(ii)   the Debtor's interest in the collateral securing such Holder's Allowed Other Secured Claim; or

(iii)   such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

(c)   *Voting*: Class 1 is Unimpaired under the Plan. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Such Holders are not entitled to vote to accept or reject the Plan.

2.   Class 2—Other Priority Claims

(a)   *Classification*: Class 2 consists of all Other Priority Claims.

(b)   *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive:

18

(i)        payment in full in Cash of such Holder's Allowed Other Priority Claim; or

(ii)       such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)     *Voting*: Class 2 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Such Holders are not entitled to vote to accept or reject the Plan.

3.    <u>Class 3—General Unsecured Claims</u>

(a)     *Classification*: Class 3 consists of all General Unsecured Claims.

(b)     *Treatment*: On the Effective Date, each Holder of a General Unsecured Claim shall receive, at the option of the Debtor:

(i)        payment in full in Cash of such Holder's Allowed General Unsecured Claim plus interest accruing thereon from the Petition Date through the Effective Date at the Federal Judgment Rate; or

(ii)       Reinstatement.

(c)     *Voting*: Class 3 is Unimpaired under the Plan. Holders of General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Such Holders are not entitled to vote to accept or reject the Plan.

4.    <u>Class 4—Equity Interests</u>

(a)     *Classification*: Class 4 consists of all Holders of Equity Interests.

(b)     *Treatment*: Each Holder of an Equity Interest shall retain such Holder's Equity Interests under the Plan, and such Equity Interests shall remain unaffected.

(c)     *Voting*: Class 4 is Unimpaired under the Plan. Holders of Equity Interests are deemed to conclusively accept the Plan under section 1126(f) of the Bankruptcy Code. Such Holders are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtor or the Debtor's Estate in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.      *Elimination of Vacant Classes*

Any Class of Claims or Equity Interests that does not have a Holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Presumed Acceptance by Non-Voting Classes*

Because all Classes are Unimpaired under the Plan, all Classes are conclusively presumed to accept. Accordingly, there are no voting Classes under the Plan.

F.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Because there are no Impaired Classes of Claims under the Plan, section 1129(a)(10) of the Bankruptcy Code does not apply. Additionally, because the Plan has no Impaired Classes and offers full payment of all Allowed Claims, section 1129(b) does not apply.

G.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, including those arising under the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor and the Reorganized Debtor reserve the right to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

I.      *Plan Objection Deadline*

The Conditional Approval Order established <u>February 16, 2021</u>, at 5:00 p.m. as the Plan Objection Deadline. All objections to the Plan must be Filed with the Bankruptcy Court and served on the Debtor in accordance with the Conditional Approval Order so that they are **actually received** on or before the Plan Objection Deadline.

# ARTICLE V.

## CONFIRMATION OF THE PLAN

### A.      Combined Hearing

The Debtor Filed a motion seeking entry of a proposed Conditional Approval Order approving this Disclosure Statement.   Pursuant to Paragraph M of the Bankruptcy Court's Procedures for Complex Cases (Effective August 7, 2020), the Debtor obtained conditional approval of the Disclosure Statement on <u>January 14, 2021</u> [Docket No. <u>416</u>].

The Debtor intends to seek final approval of the Disclosure Statement and Confirmation of the Plan at the Combined Hearing.   The Conditional Approval Order scheduled the Combined Hearing to commence on <u>February 23, 2021</u>, at 1:00 p.m., prevailing Central Time, before the Honorable David R. Jones, Chief United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002.[5]   The Combined Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment Filed with the Bankruptcy Court and served on the entities who have Filed objections to the Plan, without further notice to other parties in interest.   The Bankruptcy Court, in its discretion and before the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing.   The Plan may be modified, if necessary, before, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

### B.      Requirements for Confirmation of the Plan

Among the requirements for Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code are:  (1) the Plan is accepted by all Impaired Classes of Claims or Equity Interests, or if rejected by an Impaired Class, the Plan "does not discriminate unfairly" and is "fair and equitable" as to the rejecting Impaired Class; (2) the Plan is feasible; and (3) the Plan is in the "best interests" of Holders of Claims or Equity Interests.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies all of the requirements of section 1129 of the Bankruptcy Code.   The Debtor believes that:  (1) the Plan satisfies, or will satisfy, all of the necessary statutory requirements of chapter 11 for plan confirmation;  (2) the Debtor has complied, or will have complied, with all of the necessary requirements of chapter 11 for plan confirmation;  and (3) the Plan has been proposed in good faith. Additionally, because all Holders of Allowed Claims will be paid in cash upon the Effective Date, there are no Impaired Classes from whom approval need be sought and the Plan does not discriminate unfairly.

---

[5] Pursuant to the Bankruptcy Court's *Protocol for Emergency Public Health of Safety Conditions* (adopted by General Order 2020-4, invoked by General Orders 2020-10 and 29020-10A, and as extended and modified by General Orders 2020-11, 2020-17, 2020-18, 2020-19 and 2020-20), the Combined Hearing will be held virtually, via telephone and video, as set forth in the *Motion for an Order (I) Conditionally Approving Disclosure Statement; (II) Prescribing and Approving the Notice Procedures; and (III) Establishing Related Deadlines*, that will be served on all parties in interest.   Instructions for accessing the hearing will be contained therein.

4849-0454-4983.1

C.      *Best Interests of Creditors*

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each impaired class, that each holder of a claim or an Equity Interest in such impaired class either (1) has accepted the plan or (2) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting holder would receive or retain if the debtor liquidated under chapter 7.

Because all Allowed Claims will be paid in full in cash on the Effective Date, no Classes are Impaired, and the best interests test set forth in section 1129(a)(7) of the Bankruptcy Code is presumptively satisfied.

D.      *Feasibility*

Section 1129(a)(11) of the Bankruptcy Code requires a bankruptcy court to find that plan confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor, unless the plan proposes such liquidation.

For purposes of demonstrating that the Plan meets this feasibility standard, the Debtor, with the assistance of its advisors, prepared the distribution analysis set forth in Article VI. All remaining cash after distribution will fund the Debtor's future business operations.

Further, if no chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 case. In that event, a trustee would be appointed to liquidate the remaining assets of the Debtor and distribute proceeds to creditors in accordance with the priorities established by the Bankruptcy Code. The Plan offers full payment to the Debtor's creditors holding Allowed Claims without any additional expenses or contingencies, and will allow for the Debtor's rehabilitation. The Debtor believes that Confirmation and consummation of the Plan and the occurrence of the Effective Date is preferable to the available alternatives.

E.      *Acceptance by Impaired Classes*

The Bankruptcy Code requires, as a condition to confirmation, except as described in the following section, that each class of claims or equity interests impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such a class is not required.

The Debtor will not solicit acceptances with respect to any classes because all classes have been deemed to accept. *See* Article IV.

# ARTICLE VI.

# MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Post-Confirmation Management*

The Reorganized Debtor will be managed by the Debtor's current Chief Executive Officer and sole shareholder, Mr. Marshall. Mr. Marshall shall continue in his role as CEO as the Reorganized Debtor continues to operate, as described in greater detail in Article VI.G.

B.      *Restructuring Transactions*

Without limiting any rights and remedies of the Debtor or Reorganized Debtor under this Plan or applicable law, the entry of the Confirmation Order shall constitute authorization, but not requirement, for the Reorganized Debtor to take, or to cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of this Plan prior to, on and after the Effective Date, including such actions as may be necessary or appropriate to effectuate a corporate restructuring of its business, to otherwise simplify the overall corporate structure of the Reorganized Debtor, or to reincorporate the Reorganized Debtor under the laws of jurisdictions other than the laws of which the Debtor is presently formed or incorporated. Such restructuring may include one or more mergers, amalgamations, consolidations, restructures, dispositions, liquidations, dissolutions, or creations of one or more new Entities, as may be determined by the Debtor or Reorganized Debtor to be necessary or appropriate, but in all cases subject to the terms and conditions of this Plan and any consents or approvals required hereunder or thereunder (collectively, the "Restructuring Transactions").

All such Restructuring Transactions taken, or caused to be taken, shall be deemed to have been authorized and approved by the Bankruptcy Court. The actions to effectuate the Restructuring Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable state law and such other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of this Plan and having such other terms to which the applicable Entities may agree; (iii) the filing of appropriate certificates or articles of merger, amalgamation, consolidation, or dissolution pursuant to applicable state law; (iv) the creation of one or more new Entities; and (v) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions, but in all cases subject to the terms and conditions of this Plan and the Restructuring Documents and any consents or approvals required hereunder or thereunder.

C.      *Sources of Consideration for Plan Distributions*

The Debtor's Cash on hand, comprised primarily of the Wind Down Budget and Settlement Payment, as defined and set forth more fully in the Settlement Agreement (**Exhibit A**), provides adequate liquidity to fund distributions to be made under the Plan.

As of the filing of the Plan, the Debtor had approximately $2,849,309.65 in its bank account with Wells Fargo for satisfaction of Claims and its obligations under the Plan.[6]

The Debtor's proposed sources and uses for distributions under the Plan are described below.

| Sources | Uses | Est. Amount as of the Effective Date |
|---|---|---|
| Wind Down Budget | Allowed Administrative Expenses | $0.00 |
| | Professional Fees | $418,854.44[7] |
| | Priority Tax Claims | $14,015.82 |
| | U.S. Trustee Fees | $101,699.00[8] |
| Settlement Payment | Payment of Litigation Expenses[9] | $245,702.07 |
| | Payment of Other Secured Claims, Other Priority Claims, and General Unsecured Claims | $190,604.75 |
| Excess Proceeds and Unencumbered Assets | Retained by the Reorganized Debtor for post-confirmation operations | Residual value |

To the extent there is cash remaining after payment of the Allowed Claims, as set forth above and described in more detail in Article VI.E, such residual cash shall be retained by the Reorganized Debtor.

---

[6] Reflects a reduction of $872,100.48 for post-closing receipts payable to Mission.

[7] Reflects (i) $318,854.44 in actual unpaid professional fees incurred through November 30, 2020, plus (ii) an estimated $100,000 for professional fees incurred from December 1, 2020 through the Effective Date.

[8] The Wind Down Budget provides for up to $100,000 in United States Trustee fees. Any remaining balance in excess of that amount will be paid from the proceeds of the settlement payment.

[9] As set forth in the *Third Stipulation and Agreed Order Extending Final Order (I) Authorizing the Debtor to Use Cash Collateral, (II) Granting Certain Protections to Prepetition Lender, and (III) Modifying the Automatic Stay* [Docket No. 299 at 3], the parties agreed that not more than $10,000 in the aggregate of cash collateral could be used to pay professional fees in connection with the Litigation with Nexstar. Accordingly, all Litigation professional fees were accounted for separately and were not submitted for payment under the *Interim Compensation Order*.

24

D.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, and controversies resolved pursuant to the Plan.

E.      *Reorganized Debtor*

1.      Continued Corporate Existence

As of the Effective Date, the Debtor shall continue to exist in accordance with the applicable laws of the State of Texas and pursuant to its certificate and/or article of incorporation and by-laws, or other applicable Charter Documents, in effect immediately prior to the Effective Date, except to the extent such certificates or articles of incorporation and by-laws, or other applicable organizational documents, are amended, restated or otherwise modified under this Plan.

Upon the Effective Date, and without any further action by the shareholders, directors, or officers of the Reorganized Debtor, the Reorganized Debtor's Charter Documents shall be deemed amended (a) to the extent necessary to incorporate the provisions of the Plan, and (b) to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under Bankruptcy Code section 1123(a)(6), subject to further amendment of such Charter Documents as permitted by applicable law. The amended Charter Documents shall be filed with the Plan Supplement.

The Reorganized Debtor shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

2.      Continued Operation

After exiting Chapter 11, the Reorganized Debtor continue to operate as Marshall Broadcasting Group, Inc. The Reorganized Debtor will be in the business of digital content creation, distribution and event creation, as discussed previously.

All funds remaining with the Reorganized Debtor after the payment of all Allowed Claims, will be retained for use in connection with future business operations. The Debtor estimates that after payment of the Allowed Claims, the Reorganized Debtor will retain approximately $1,750,000.00. This amount will be sufficient to fund the Reorganized Debtor's ongoing business.

3.      Management and Board of Directors

The Reorganized Debtor will be managed by Pluria Marshall, Jr. On or after the Effective Date, the Debtor's board of directors will be comprised of one board member, Pluria Marshall, Jr., with other board members to be appointed (if at all) after the Effective Date, in accordance with the Reorganized Debtor's Charter Documents.

F.      *Vesting of Assets in the Reorganized Debtor Free and Clear of Liens and Claims*

Except as otherwise expressly provided herein, the Confirmation Order, or any documents relating to or arising out of the Restructuring Transactions, pursuant to sections 1123(a)(5), 1123(b)(3), 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estate of the Debtor, including all claims, rights, and Causes of Action, shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, and any other encumbrances. On and after the Effective Date, the Reorganized Debtor may (i) operate its business, (ii) use, acquire, and dispose of its property, and (iii) compromise or settle any Claims, in each case without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

G.      *Cancellation of Notes, Certificates, Securities, and Instruments*

On the Effective Date, except as otherwise provided for herein or any other document incorporated in the Plan, any certificate, security, share, note, bond, indenture, purchase right, option, warrant, certificates of designations or other instrument or documents directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor, to the extent not already cancelled, shall be deemed cancelled and of no further force or effect, without the requirement for any further action on the part of the Bankruptcy Court or any other Person; *provided that* as set forth herein, Equity Interests in the Debtor shall remain intact and unaffected hereby.

H.      *Corporate Action*

The Debtor and/or the Reorganized Debtor may take any and all actions to execute, deliver, File, or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by Equity Interest Holders, officers or directors of the Debtor or the Reorganized Debtor, or by any other Person (except for those expressly required pursuant hereto).

Prior to, on and after the Effective Date (as appropriate), all matters provided for herein that would otherwise require approval of the stockholders, directors, officers, managers, members or partners of the Debtor (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by such Person or Entity, or the need for any approvals, authorizations, actions or consents of or from any such Person or Entity.

As of the Effective Date, all matters provided for in this Plan involving the legal or corporate structure of the Debtor or the Reorganized Debtor (including, without limitation, the selection of directors and officers for), and any legal or corporate action required by the Debtor or the Reorganized Debtor in connection herewith, shall be deemed to have occurred and shall be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy

Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person or Entity.

On and after the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor are authorized to issue, execute, and deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person or Entity. The secretary and any assistant secretary of the Debtor and the Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions.

I.      *Release of Liens*

To the fullest extent provided under section 1141(c) and other applicable provisions of the Bankruptcy Code, except as otherwise provided herein, on the Effective Date, all Liens, Claims, mortgages, deeds of trust, or other security interests against the assets or property of the Debtor or the Estate shall be fully released, canceled, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity. The filing of the Confirmation Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, Claims and other interests to the extent provided in the immediately preceding sentence. Any Person or Entity holding such Liens, Claims or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtor such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtor.

J.      *Effectuating Documents; Further Transactions*

The Debtor, the Reorganized Debtor, and each of their respective officers, directors and members are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and any other agreements or documents and take any such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

K.      *Exemption from Certain Taxes and Fees*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Trusts; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject

27

to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Assignment of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, the Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned or rejected by the Debtor, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtor on or before the Effective Date; *provided, however,* that nothing in this paragraph shall in any way effect the Settlement Agreement or the APA. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the rejections of contract and lease assumptions or rejections described above, as of the Effective Date. The rejections set forth in this Article VII shall include rejecting any obligations of the Debtor pursuant to its Charter Documents and agreements to indemnify any officers or directors of the Debtor for any prepetition actions or failures to act.

B.    *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of any Executory Contract or Unexpired Lease pursuant to the Plan must be Filed with Bankruptcy Court and served on the Debtor or, after the Effective Date, the Reorganized Debtor, no later than 30 days after the later of (i) the Effective Date or (ii) the date of entry of an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease not filed within the foregoing time period shall be discharged, and the Holder of such Claim shall be forever barred from asserting such Claim against the Debtor, its Estate and the Reorganized Debtor.

C.    *Inclusiveness*

Unless otherwise specified herein, each Executory Contract and Unexpired ease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease.

D.      *Indemnification Obligations*

Subject to the occurrence of the Effective Date, the Debtor's obligation to indemnify, defend, reimburse, or limit the liability of the current and former directors, officers, employees, attorneys, other professionals and agents of the Debtor, and such current and former directors' and officers' respective Affiliates, against any Claims or Causes of Action under its corporate charters, by-laws, limited liability company agreement, or other organizational documents and agreements or applicable law, shall survive Confirmation, shall be assumed by the Reorganized Debtor, and will remain in effect after the Effective Date.

E.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease on Schedule G of the Debtor's Schedules or in the Plan, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor's Estate has any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

F.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases of nonresidential real property pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VIII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article IX hereof. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

Except as otherwise set forth herein, all distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter by the Disbursing Agent, the timing of which shall be subject to the reasonable discretion of the Disbursing Agent.

**B.**     *Rights and Powers of the Debtor and Reorganized Debtor*

On and after the Effective Date, the Reorganized Debtor and each of its respective designees or representatives shall have the right to object to, Allow, or otherwise resolve any Claim, subject to the terms hereof.

The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

**C.**     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.     Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and the Disbursing Agent shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.     Delivery of Distributions in General

(a)     Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of General Unsecured Claims that are not Allowed as of the Effective Date but which later become Allowed shall be deemed to have been made on the Effective Date.

(b)     Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan, no partial payments and no partial distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

(c)     Distributions

Any distribution on account of a Claim that is not made on the Effective Date because such Claim is not Allowed on such date, shall be held by the Reorganized Debtor in a reserve account, and distributed after such Claim is Allowed. No post-Effective Date interest shall accrue or be paid for any Claim or portion thereof that is Allowed after the Effective Date.

3.     De Minimis Distributions

No Cash payment of less than $50.00, in the reasonable discretion of the Debtor or the Reorganized Debtor, as applicable, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

4.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of a General Unsecured Claim is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without post-Effective Date interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 120 days from the date the initial distribution is made. After such date, (i) all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Reorganized Debtor and become property of the Reorganized Debtor automatically and without the need for any further action by the Reorganized Debtor or the Bankruptcy Court, (ii) the Claim in respect of such property shall be forever released, discharged and barred, and (iii) the Holder of such Claim shall be forever barred and enjoined from asserting such Claim against the Reorganized Debtor and its property.

5.    Manner of Payment

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Distribution Agent by check or by wire transfer.

D.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan and all distributions hereunder, to the extent applicable, the Debtor and the Reorganized Debtor, as applicable, are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Debtor and Reorganized Debtor reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

E.    *Setoffs and Recoupment*

Except as otherwise expressly provided herein, the Debtor or the Reorganized Debtor, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by

the Debtor or the Reorganized Debtor of any such Claim it may have against the Holder of such Claim.

F.  *Claims Paid or Payable by Third Parties*

    1.  <u>Claims Paid by Third Parties; Recourse to Collateral</u>

The Debtor and the Reorganized Debtor, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, as applicable, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

    2.  <u>Claims Payable by Insurance, Third Parties; Recourse to Collateral</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtor's insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    3.  <u>Applicability of Insurance Policies</u>

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party of any of the Debtor's insurance policies with respect to such policies.

# ARTICLE IX.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND EQUITY INTERESTS

A.    *Allowance of Claims and Equity Interests*

Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Reorganized Debtor, shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.

B.    *Objections to Claims and Equity Interests*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Reorganized Debtor shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    *Estimation of Claims*

On and after the Effective Date, the Reorganized Debtor, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim or Disputed Equity Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed, contingent, or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtor or the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim, provided, however, the Debtor or the Reorganized Debtor shall reserve for such Disputed Claims pending resolution of such proceedings. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion

33

requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims Register Without Objection*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to or requests to estimate Claims shall be Filed on or before the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court upon Motion, or otherwise pursuant to the terms of the Plan.

F.      *Disallowance of Claims*

To the maximum extent provided by section 502(d) of the Bankruptcy Code, any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or Reorganized Debtor.

G.      *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor and any such new or amended Claim Filed without such prior authorization shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

H.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed as set forth in Article IX, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim or is otherwise permitted by further order of the Bankruptcy Court.

I.        *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of a court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any post-Effective Date interest.

J.        *Single Satisfaction of Claims*

In no event shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE X.

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.        *Compromise and Settlement of Claims, Equity Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against, and Equity Interests in, the Debtor and its Estate and Causes of Action against other Entities.

B.        *Term of Injunctions or Stays*

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Case under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

C.        **Release by the Debtor**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date,**

each Released Party is deemed to be released by each of the Debtor and the Reorganized Debtor from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor or the Reorganized Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Reorganized Debtor may have against any Holder of any Claim against, or Equity Interest in, the Debtor, based on or relating to, or in any manner arising from, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the Debtor's in- or out-of-court restructuring efforts, the Debtor's capital structure, management, ownership, or operation thereof, the Restructuring Transactions, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement and the Plan, the negotiation, implementation, or terms of the APA and the Settlement Agreement and any applicable related term sheets or proposals, the filing of the Chapter 11 Case, the pursuit of Confirmation and Consummation of the Plan, the administration and implementation of the Plan, and any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing taking place on or before the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article X by the Debtor, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article X is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iii) the rights and obligations of any party under the APA and the Settlement Agreements or (iv) the rights of Holders of Allowed Claims or Equity Interests to receive distributions under the Plan; *provided* that any of the Debtor's Causes of Action settled pursuant to the Plan shall be released.

D.     *Third Party Release*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, each of the Releasing Parties shall be deemed to have released the Debtor, the Reorganized Debtor, and

36

each Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtor's in- or out-of-court restructuring efforts, the Debtor's capital structure, management, ownership, or operation thereof, any restructuring transactions, the sale and marketing process in connection with any of the Sale Transaction, the wind-down of the Debtor's estate, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Sale Transaction, the negotiation, implementation, or terms of the Settlement Agreement and any applicable related term sheets or proposals, the Plan, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date or relating to any of the forgoing.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article X, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article X is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) the rights and obligations of any party under the APA and the Settlement Agreements or (v) the rights of Holders of Allowed Claims or Equity Interests to receive distributions under the Plan; *provided* that any of the Debtor's Causes of Action settled pursuant to the Plan shall be released.

E.    *Exculpation*

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Cause of Action, Claim, or Equity Interest for any postpetition act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, consummation of the Sale Transaction, the formulation, preparation, dissemination,

negotiation, filing, or consummation of the Disclosure Statement, the Settlement Agreement and any term sheets or proposals related thereto, the Plan, or any restructuring transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing distributions made pursuant to the Plan.

F.    *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Equity Interests, Causes of Action, or liabilities that: (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released by the Debtor pursuant to the Plan; (c) have been released by third parties pursuant to the Plan, (d) are subject to exculpation pursuant to the Plan; or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Equity Interests, Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Equity Interests, Causes of Action or liabilities; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims, Equity Interests, Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Equity Interests, Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Equity Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Equity Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan.  Upon entry of the Confirmation Order, all Holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed

38

**Claim or Allowed Equity Interest, as applicable, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim or Equity Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article X.F of the Plan.**

G.      *Recoupment*

In no event shall any Holder of Claims or Equity Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtor, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

H.      *Subordination Rights*

Any distributions under the Plan to Holders shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

## ARTICLE XI.

## SUBSTANTIAL CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Consummation of the Plan*

It shall be a condition to Consummation of the Plan that the following conditions have been satisfied or waived pursuant to the provisions of Article XI.B hereof:

1.      the Bankruptcy Court shall have entered the Confirmation Order in form and substance materially consistent with the Plan in all respects; and

2.      all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code. Within five (5) Business Days of the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date and serve the same on all creditors and parties in interest.

B.      *Waiver of Conditions*

The conditions to Consummation of the Plan set forth in Article XI.A hereof may be waived by the Debtor, other than the condition set forth in Article XI.A(1).

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.      *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, the Debtor's Estate, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, the Debtor's Estate, any Holders, or any other Entity in any respect.

## ARTICLE XII.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to or after the Confirmation Date. Holders of Claims and Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided, however*, that any holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired.

B.      *Revocation or Withdrawal of the Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of the Debtor, the Debtor's Estate, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor, the Debtor's Estate, or any other Entity.

4849-0454-4983.1

## ARTICLE XIII.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Debtor's Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption, assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Case and grant or deny any application involving the Debtor that may be pending on the Effective Date or that are retained and preserved by the Debtor herein;

(c)     To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are effected as provided in the Plan;

(d)     To hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim and Equity Interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Disputed Equity Interest, in whole or in part;

(e)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     To take any action and issue such orders as may be necessary to construe, enforce, implement execute and consummate the Plan or maintain the integrity of the Plan following consummation;

(g)     To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all requests for payment of Fee Claims;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

4849-0454-4983.1

(l)     To hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted hereunder;

(m)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan; and

(n)     To enter a final decree(s) closing the Chapter 11 Case.

## ARTICLE XIV.

## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

A.     *Introduction*

The following discussion summarizes certain United States ("U.S.") federal income tax consequences of the implementation of the Plan to the Debtor and Holders of Claims. This summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), the U.S. Treasury Regulations promulgated thereunder (the "Treasury Regulations"), judicial decisions, published administrative rules, and pronouncements of the U.S. Internal Revenue Service (the "IRS"), all as in effect on the date hereof (collectively, "Applicable Tax Law"). Changes in Applicable Tax Law or new interpretations thereof may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below. The Debtor has not requested, and does not intend to request, any ruling or determination from the IRS or any other taxing authority with respect to the tax consequences discussed herein, and the discussion below is not binding upon the IRS or any court. No assurance can be given that the IRS would not assert, or that a court would not sustain, a position different from any position discussed herein.

This summary does not address non-U.S., U.S. state or local, or non-income tax consequences of the Plan, nor does it purport to address all potential aspects of U.S. federal income taxation that may be relevant to a Holder in light of its individual circumstances or to a Holder that may be subject to special tax rules (such as Holders that are related to the Debtor within the meaning of the Tax Code, Holders that are liable for alternative minimum tax, the so-called "net investment income tax" under section 1411 of the Tax Code, or the base erosion and anti-abuse tax, U.S. Holders whose functional currency is not the U.S. dollar, U.S. expatriates, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, controlled foreign corporations, passive foreign investment companies, pass-through entities, beneficial owners of pass-through entities, subchapter S corporations, Holders that hold Claims as part of a straddle, hedge, conversion transaction, or other integrated investment, accrual method U.S. Holders that prepare an "applicable financial statement" (as defined in section 451 of the Tax Code), Holders that use a mark-to-market method of accounting, and Holders that are themselves in bankruptcy). Further, this summary assumes that a Holder of Claims holds only Claims in a single class and holds such Claims only as "capital assets" within the meaning of section 1221 of the Tax Code (generally, property held for investment). This summary also assumes that the various debt, and other arrangements intended to be treated as debt for U.S. federal income tax purposes, to which any of the Debtor are a party will be respected for U.S. federal income tax purposes as such. This summary does not discuss differences in tax consequences to Holders of Claims that act or receive

42

consideration in a capacity other than as any other Holder of a Claim in the same Class, and the tax consequences for such Holders may differ materially from those described below.

For purposes of this Article XIV, a "U.S. Holder" is a Holder of a Claim that is: (1) an individual citizen or resident of the United States for U.S. federal income tax purposes; (2) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof, or the District of Columbia; (3) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (4) a trust (a) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more United States persons (within the meaning of section 7701(a)(30) of the Tax Code) have authority to control all substantial decisions of the trust or (b) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person. For purposes of this discussion, a "non-U.S. Holder" is any Holder of a Claim that is not a U.S. Holder or a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes).

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a Holder of a Claim, the tax treatment of a partner (or other beneficial owner) of such partnership (or other pass-through entity) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the entity and such partner (or other beneficial owner). Partners (or other beneficial owners) of partnerships (or other pass-through entities) that are Holders of Claims should consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

**ACCORDINGLY, THE FOLLOWING GENERAL SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE RESTRUCTURING TRANSACTIONS IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. ALL HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE U.S. FEDERAL, STATE, AND LOCAL, NON-U.S., NON-INCOME (E.G., ESTATE), AND OTHER TAX CONSEQUENCES OF THE PLAN.**

B.      *Certain U.S. Federal Income Tax Consequences to the Debtor*

1.      Characterization of Restructuring Transactions

The Debtor previously transferred certain of its assets to Mission pursuant to the APA in a taxable transaction. After payment of all Claims pursuant to the Plan, the Reorganized Debtor will retain the residual value of the proceeds of the Settlement for post-effective date operations. The Debtor will realize gain or loss upon the transfer of the portion of its assets to Mission in amounts equal to the difference between the amounts realized on such transfers and the applicable Debtor's tax basis in the applicable assets. The Debtor will report the transactions contemplated by the Plan on its tax returns consistent with such characterization.

2.     Cancellation of Debt and Reduction of Tax Attributes

In general, if a taxpayer satisfies its outstanding indebtedness for total consideration less than the amount of such indebtedness, such taxpayer will realize and recognize cancellation of debt income ("CODI") for U.S. federal income tax purposes. The amount of CODI, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b) the sum of (i) the amount of any Cash paid, (ii) the issue price of any new indebtedness of the taxpayer issued, and (iii) the fair market value of any other consideration given in satisfaction of such indebtedness at the time of the exchange.

Under section 108 of the Tax Code, a taxpayer is not required to include CODI in gross income (a) if the taxpayer is under the jurisdiction of a court in a case under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding (the "Bankruptcy Exception") or (b) to the extent that the taxpayer is insolvent immediately before the discharge (the "Insolvency Exception"). Instead, as a consequence of such exclusion, a taxpayer must reduce its tax attributes by the amount of CODI that it excluded from gross income pursuant to the rule discussed in the preceding sentence. Such reduction in tax attributes occurs only after the tax for the year of the debt discharge has been determined. In general, tax attributes will be reduced in the following order: (a) net operating losses ("NOLs") and NOL carryforwards; (b) general business credit carryovers; (c) minimum tax credit carryovers; (d) capital loss carryovers; (e) tax basis in assets (but not below the amount of liabilities to which the taxpayer remains subject); (f) passive activity loss and credit carryovers; and (g) foreign tax credit carryovers.[10] Alternatively, a taxpayer with CODI may elect first to reduce the basis of its depreciable assets pursuant to section 108(b)(5) of the Tax Code. Any excess CODI over the amount of available tax attributes is not subject to U.S. federal income tax and has no other U.S. federal income tax impact.

C.     Certain U.S. Federal Income Tax Consequences to Certain U.S. Holders of Claims

The following discussion assumes that the Debtor will undertake the Restructuring Transactions currently contemplated by the Plan. U.S. Holders are strongly urged to consult their tax advisors regarding the tax consequences of the Restructuring Transactions.

1.     U.S. Federal Income Tax Consequences to U.S. Holders of General Unsecured Claims

The U.S. federal income tax consequences of the Plan to a U.S. Holder of a General Unsecured Claim may depend, in part, on whether such Claim constitutes a "security" for federal income purposes. The term "security" is not defined in the Tax Code or in the Treasury Regulations issued thereunder and has not been clearly defined by judicial decisions. The determination of whether a particular debt constitutes a "security" depends on an overall evaluation of the nature of

---

[10]   Under the 2017 tax reform legislation commonly referred to as the Tax Cuts and Jobs Act, interest deductions in excess of statutorily-defined limits are deferred under section 163(j) of the Tax Code unless and until a debt issuer has sufficient adjusted taxable income to be entitled to claim such deductions. It is unclear whether interest deductions that are deferred under section 163(j) of the Tax Code are subject to reduction under section 108 of the Tax Code.

the original debt. A debt's original term is one of the most significant factors considered in determining if a particular debt is a security. Generally, debt obligations issued with a term of less than five (5) years (e.g., trade debt and revolving credit obligations) do not constitute securities. Debt obligations issued with a term of ten (10) or more years generally constitute securities for federal income tax purposes. There are numerous other factors that could be considered in determining if a debt instrument is a security, including the security for payment, the obligor's creditworthiness, creditors' subordination rights (or lack thereof), the creditors voting or management rights in or over the obligor, and convertibility of the instrument into equity. The General Unsecured Claims are not believed to be "securities", but each such Holder is urged to consult its tax advisor regarding the status of its Claim, or any portion thereof, as a "security" for federal income tax purposes and any potential tax impact of such status.

Under the Plan, Holders of General Unsecured Claims (other than Claims representing accrued but unpaid interest, and excluding any portion treated as imputed interest) are receiving Cash distributions in satisfaction of their Claims. In general, a holder of an Allowed General Unsecured Claim will recognize gain or loss in an amount equal to the difference between the Cash received and the U.S. Holder's adjusted tax basis, if any, in its Claim (other than any Claim representing accrued but unpaid interest). Where gain or loss is recognized by a Holder in respect of its Allowed General Unsecured Claim that does not constitute a "security", the character of such gain or loss (as long-term capital, short-term capital, or ordinary) will be determined by a number of factors, including the Holder's tax status, whether the Claim in respect of which any property was received constituted a capital asset in the Holder's hands and how long it had been held, whether the Claim was originally issued at a discount or acquired at a "market discount", and whether and to what extent the Holder had previously claimed a bad debt deduction in respect of such Claim. If a Holder receives Cash for a General Unsecured Claim for services, not property, the Holder will under most circumstances, recognize ordinary income.

2.    Accrued Interest

To the extent that any amount received by a U.S. Holder of an Allowed Claim is attributable to accrued but untaxed interest on the debt instruments constituting the surrendered Claim, the receipt of such amount should be taxable to the U.S. Holder as ordinary interest income (to the extent not already taken into income by the U.S. Holder). Conversely, a U.S. Holder of an Allowed Claim may be able to recognize a deductible loss (or, possibly, a write off against a reserve for worthless debts) to the extent that any accrued interest previously was included in the U.S. Holder's gross income but was not paid in full by the Debtor. Such loss may be ordinary, but the tax law is unclear on this point.

If the fair market value of the consideration received pursuant to the Plan is not sufficient to fully satisfy all principal and interest on Allowed Claims, the extent to which such consideration will be attributable to accrued interest is unclear. Under the Plan, the aggregate consideration to be distributed to Holders of Allowed Claims in each Class will be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on these Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes, and certain case law generally indicates that a final payment on a distressed debt instrument that is insufficient to repay outstanding principal and interest will be allocated to

4849-0454-4983.1

principal, rather than interest, while certain Treasury Regulations treat payments as allocated first to any accrued but untaxed interest. The above discussion is not binding on the IRS. Consequently, the IRS could take the position that the consideration received by the Holder should be allocated in some way other than as provided in the Plan.

**U.S. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS AND THE U.S. FEDERAL INCOME TAX TREATMENT OF ACCRUED INTEREST**.

D.    *Information Reporting and Back-Up Withholding*

The Debtor will withhold all amounts required by law to be withheld from payments of interest. The Debtor will comply with all applicable reporting requirements of the Tax Code. In general, information reporting requirements may apply to distributions or payments made to a Holder of a Claim under the Plan. In addition, backup withholding of taxes will generally apply to payments in respect of a Claim under the Plan, unless, in the case of a U.S. Holder, such U.S. Holder provides a properly executed IRS Form W-9 (or successor form) or, in the case of a non-U.S. Holder, such non-U.S. Holder provides a properly executed applicable IRS Form W-8 (or successor form) (or, in each case, such Holder otherwise establishes eligibility for an exemption).

Backup withholding is not an additional tax. Amounts withheld under the backup withholding rules may be credited against a Holder's U.S. federal income tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS (generally, a U.S. federal income tax return). Holders are urged to consult their tax advisors on the requirements for filing any potential claim for refund.

In addition, from an information reporting perspective, the Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holders' tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY U.S. STATE OR LOCAL OR NON-U.S. TAX LAWS AND OF ANY CHANGE IN APPLICABLE TAX LAW.**

E.      *No Legal or Tax Advice Is Provided to You by this Disclosure Statement*

This Disclosure Statement is not legal advice to you. The contents of this Disclosure Statement should not be construed as legal, accounting, business, or tax advice. Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, accounting, tax, and other matters concerning his, her, or its Claim or Equity Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to object to Confirmation of the Plan. The proponent of the Plan and its professionals will not have any liability to any person arising from or related to the U.S. federal, state, local, foreign or any other tax consequences of the Plan or the foregoing discussion.

# ARTICLE XV.

## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims or Equity Interests (regardless of whether such Holders are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan.

B.      *Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Reorganized Debtor and all Holders of Allowed Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Reservation of Rights*

Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor or Reorganized Debtor with respect to the Plan, the Disclosure Statement, or the Confirmation Order, shall be or shall be deemed to be an admission or waiver of any rights of the Debtor or Reorganized Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

D.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor,

47

administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.    *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the following entities and shall be served via first class mail, overnight delivery, or messenger on.

If to the Debtor or Reorganized Debtor, to:

> Marshall Broadcasting Group, Inc.
> 3731 Wilshire Boulevard
> Suite 840
> Los Angeles, CA 90010
> Attn: Pluria Marshall, Jr.

with copies to:

> Gray Reed & McGraw LLP
> 1300 Post Oak Blvd. Suite 2000
> Houston, TX 77056
> Attn: Jason S. Brookner and Lydia R. Webb
>
> -and-
>
> Levene Neale Bender Yoo & Brill L.L.P.
> 10240 Constellation Boulevard, Suite 1700
> Los Angeles, CA 90067
> Attn: David B. Golubchik and Eve Karasik

F.    *Entire Agreement*

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.    *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided* that at the request of the Debtor, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be acceptable to the Debtor. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted

in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (3) nonseverable and mutually dependent.

H.      *Waiver or Estoppel*

Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

*[Signature Page Follows]*

Dated: January 29, 2021
　　　　Houston, Texas

　　　　　　　　　　　　　　　　Marshall Broadcasting Group, Inc.


　　　　　　　　　　　　By:　　*/s/ Pluria Marshall, Jr.*　　　　　　
　　　　　　　　　　　　　　　　Pluria Marshall, Jr.
　　　　　　　　　　　　　　　　Chief Executive Officer


Jason S. Brookner (TX Bar No. 24033684)
Lydia R. Webb (TX Bar No. 24083758)
**GRAY REED**
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:　(713) 986-7000
Facsimile:　(713) 986-7100
Email:　jbrookner@grayreed.com
　　　　lwebb@grayreed.com

-and-

David B. Golubchik　(*pro hac vice*)
Eve H. Karasik (*pro hac vice*)
**LEVENE NEALE BENDER YOO
　　& BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone:　(310) 229-1234
Facsimile:　(310) 229-1244
Email:　dbg@lnbyb.com
　　　　ehk@lnbyb.com

**CO-COUNSEL TO THE DEBTOR**

**<u>EXHIBIT A</u>**

**Settlement Agreement**

4849-0454-4983.1

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "Agreement") is made and entered into by and between Marshall Broadcasting Group, Inc. ("MBG"), Pluria Marshall, Jr. ("Marshall," and collectively with MBG, the "Marshall Parties"), and Nexstar Inc. (formerly known as Nexstar Broadcasting, Inc., "Nexstar"). MBG, Marshall, and Nexstar will collectively be referred to herein as the "Parties" and may individually be referred to as a "Party." This Agreement was fully executed by all Parties on November 2, 2020 (the "Execution Date").

## RECITALS

WHEREAS, on or about April 3, 2019, MBG filed a complaint in the Supreme Court of the State of New York, captioned *Marshall Broadcasting Group, Inc. v. Nexstar Broadcasting, Inc.*, Index No. 651943/2019 (the "New York Action");

WHEREAS, on June 12, 2019, MBG filed a complaint with the Federal Communications Commission ("FCC"), alleging that Nexstar had violated certain FCC rules and policies, which MBG amended by the Supplement to Complaint dated September 6, 2019 and the Second Supplement to Complaint dated July 7, 2020 (the "FCC Complaint");

WHEREAS, on November 20, 2019, Nexstar filed an Answer and Counterclaims in the New York Action, alleging certain counterclaims against MBG, and asserting third-party claims against Marshall in his individual capacity;

WHEREAS, on December 3, 2019, MBG filed a voluntary petition for relief, thereby initiating a chapter 11 bankruptcy case in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") captioned *In re Marshall Broadcasting Group, Inc.*, Case No. 4:19-bk-36743 (the "Bankruptcy Case");

WHEREAS, on March 31, 2020, MBG initiated an adversary proceeding in the Bankruptcy Court captioned *Marshall Broadcasting Group, Inc. v. Nexstar Broadcasting, Inc.*, Adversary Proceeding No. 20-03074 (the "Adversary Proceeding");

WHEREAS, on August 27, 2020, Nexstar filed an Answer and Counterclaims in the Adversary Proceeding, alleging certain counterclaims against MBG;

WHEREAS, on September 22, 2020, Nexstar filed a motion seeking authority from the Bankruptcy Court to bring certain fraudulent transfer claims against Marshall in his individual capacity on behalf of MBG's Estate;

WHEREAS, on October 1, 2020, Nexstar Broadcasting, Inc. changed its name to Nexstar Inc.; and

WHEREAS, to avoid the expense and uncertainty of protracted litigation, the Parties desire to settle all their disputes according to the terms of this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby

acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between MBG, Marshall, and Nexstar:

1.      Recitals:  The Parties acknowledge the "WHEREAS" clauses preceding paragraph 1 are true and correct, and they are incorporated herein as contractual terms to this Agreement.

2.      Court Approval; Effective Date; Termination:  This Agreement is subject to, and shall only become effective and binding on the Parties upon, the Bankruptcy Court's approval of this Agreement in the Bankruptcy Case (the "Effective Date").  MBG shall use its best efforts to obtain approval of this Agreement in the Bankruptcy Case and shall file a motion seeking the Bankruptcy Court's approval of this Agreement in the Bankruptcy Case within 5 days of the Execution Date.  If the Bankruptcy Court does not approve this Agreement, then (a) this Agreement (other than this paragraph) shall terminate and be void; (b) all of the statements, concessions, consents, and agreements reflected in this Agreement (other than this paragraph) shall be void; and (c) the Parties may not use or rely on any such statement, concession, consent, or agreement reflected in this Agreement in any public statement or litigation.

3.      Withdrawal of FCC Complaint:  Within 3 business days of the Effective Date, the Marshall Parties shall withdraw the FCC Complaint referenced above and shall deliver to Nexstar a copy of the FCC-stamped return copy of the withdrawal.  The date on which Nexstar receives the FCC-stamped confirmation of withdrawal shall be the "Withdrawal Date."

4.      Dismissal of the Adversary Proceeding and New York Action:  The Parties agree to cause their respective counsel to execute stipulations of dismissal with prejudice for filing in both the New York Action and the Adversary Proceeding in the forms attached hereto as Exhibits A and B respectively.  MBG shall file the executed stipulations of dismissal in both the New York Action and the Adversary Proceeding within 3 business days of the Effective Date.  The later of the dates on which the stipulation of dismissal in the Adversary Proceeding or the stipulation of dismissal in the New York Action have been approved and/or so-ordered by the Bankruptcy Court or the Supreme Court for the State of New York, shall be the "Dismissal Date."

5.      Settlement Payment:  In full and final settlement of all claims between the Parties, Nexstar shall pay, and MBG shall accept, the sum of Two Million and Two Hundred and Fifty Thousand Dollars and No Cents ($2,250,000.00) (the "Settlement Payment"). On or before the Execution Date, MBG will provide to Nexstar: (1) the account details for an attorneys' trust account held in the custody of its counsel into which Nexstar will deposit the Settlement Payment (the "Designated Account"); and (2) a completed Form W-9 for the law firm that has custody of the Designated Account.  Within 5 business days after the Effective Date, Nexstar shall tender the Settlement Payment into the Designated Account.  Within 2 business days after the later of the Withdrawal Date or the Dismissal Date, MBG's counsel shall give notice to Nexstar of its intent to release the Settlement Payment from the Designated Account to MBG.  Nexstar shall provide its consent, not to be unreasonably withheld, within 2 business days thereafter.  Upon receiving Nexstar's consent, MBG's counsel may release the Settlement Payment from the Designated Account to MBG.

*Execution Copy*

6.      <u>Taxes</u>: The Parties agree that the Settlement Payment under this Agreement shall be made without any local, state, or federal income, FICA, or other taxes (collectively "<u>Taxes</u>") being withheld by Nexstar.  MBG and Marshall understand they are fully and solely responsible for the payment of any and all Taxes that MBG or Marshall may owe under any federal, state, or local tax laws in connection with the Settlement Payment. Nexstar makes no warranty or representations concerning the treatment of the Settlement Payment under any tax laws.

7.      <u>Withdrawal of Proofs of Claims and Motion for Authority</u>: Nexstar shall cause its counsel to withdraw and release its proof of claim (Claim No. 7) against MBG and the Motion for Authority (Docket No. 362), each of which was filed in the Bankruptcy Case, with prejudice within 5 business days of the later of the Withdrawal Date or the Dismissal Date.  Nexstar shall not be entitled to receive any distributions or payments from MBG or MBG's bankruptcy estate, and Nexstar agrees not to file any additional claims against MBG, including any proofs of claim or administrative expense claims.  Nexstar shall not seek to assert any estate claims on behalf of MBG against Marshall or any other person or entity.

8.      <u>Release of Nexstar by the Marshall Parties</u>:  Effective upon Nexstar's delivery of the Settlement Payment to the Designated Account, the Marshall Parties, on behalf of themselves, their affiliates, related entities, successors, representatives, and assigns (collectively, the "<u>Marshall Releasors</u>") completely release and forever discharge Nexstar and all of its related business entities (including, but not limited to, its parent, member, affiliated and subsidiary corporations, firms, partnerships, and joint ventures), and all of its officers, directors, trustees, members, boards, employees, servants, agents, attorneys, heirs, executors, beneficiaries, administrators, predecessors, successors, and assigns (collectively, the "<u>Nexstar Releasees</u>"), whether acting as agents or in their individual capacities, from all past, present, and future claims, demands, obligations, actions, causes of action, wrongful death or bodily or personal injury claims, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, liens specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs, expenses, losses of services or compensation, judgments, extents, executions, and any other assertion of liability or request for relief of any kind whatsoever, whether known or unknown, based upon any legal or equitable theory, whether contractual, common-law, statutory (federal, state, or local), or otherwise, whether arising under domestic or foreign laws, and whether asserted in the United States of America or elsewhere, which any Marshall Releasor hereafter can, shall, or may now have, or may hereafter accrue or otherwise be acquired, against any Nexstar Releasee, upon, or by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter, cause, or thing whatsoever, from the beginning of the world to the Execution Date (the "<u>Marshall Released Claims</u>"), provided that, the Marshall Releasors expressly do not release the Nexstar Releasees from any claims that may arise by virtue of the breach of this Agreement.

9.      <u>Release of the Marshall Parties by Nexstar</u>:  Effective upon Nexstar's delivery of the Settlement Payment to the Designated Account, Nexstar, on behalf of itself, its affiliates, related entities, successors, representatives, and assigns (collectively, the "<u>Nexstar Releasors</u>"), completely releases and forever discharges the Marshall Parties and all of their related business entities (including, but not limited to, their parent, member, affiliated and subsidiary corporations, firms, partnerships, and joint ventures), and all of their officers, directors, trustees, members, boards, employees, servants, agents, attorneys, heirs, executors, beneficiaries, administrators, predecessors, successors, and assigns (collectively, the "<u>Marshall Releasees</u>"), whether acting as agents or

in their individual capacities, from all past, present, and future claims, demands, obligations, actions, causes of action, wrongful death or bodily or personal injury claims, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, liens specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs, expenses, losses of services or compensation, judgments, extents, executions, and any other assertion of liability or request for relief of any kind whatsoever, whether known or unknown, based upon any legal or equitable theory, whether contractual, common-law, statutory (federal, state or local), or otherwise, whether arising under domestic or foreign laws, and whether asserted in the United States of America or elsewhere, which any Nexstar Releasor hereafter can, shall, or may now have, or may hereafter accrue or otherwise be acquired, against any Marshall Releasee, upon, or by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter, cause, or thing whatsoever, from the beginning of the world to the Execution Date (the "Nexstar Released Claims," and collectively with the Marshall Released Claims, the "Released Claims"), provided that, the Nexstar Releasors expressly do not release the Marshall Releasees from any claims that may arise by virtue of the breach of this Agreement.

10.     Unknown Claims:  Unknown claims shall mean any Released Claims pursuant to paragraphs 8 and 9 of this Agreement, as defined herein, that the Parties do not know or suspect to exist in their favor at the time of giving the releases in this Agreement that if known by them, might have affected their settlement and release in this Agreement.  With respect to any and all Released Claims in paragraphs 8 and 9 of this Agreement, the Parties shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATE-RIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code section 1542.  The Parties may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties shall expressly have and be deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

11.     No Admission of Liability:  The Parties acknowledge that this Agreement has been executed in connection with the compromise and settlement of disputed claims.  The Agreement

and the actions taken pursuant thereto do not constitute an acknowledgement or admission on the part of any Party of liability for any matter or precedent upon which liability may assessed or the merits of any defenses asserted.

12.    <u>Non-Disparagement</u>:  Neither any MBG executive, Marshall, nor any Nexstar executive will disparage or encourage or induce others to disparage the other Parties and/or any of the other Parties' past, present and/or future employees, executives, or directors in any way, including making any disparaging statements in verbal, written, electronic, or any other form, and including before the FCC or any other governmental entity.

13.    <u>No Public Statements</u>:  Aside from any motion or other filing required to be made with the Bankruptcy Court in the Bankruptcy Case or the Adversary Proceeding to obtain court approval for this Agreement, any other public filing necessary to effectuate the dismissals required by the terms of this Agreement, or any public filings required by any regulatory agency, neither MBG, nor Marshall, nor any Nexstar executive shall make any public statement regarding this Agreement or the dispute between the Parties and shall not solicit others to do so.  In the event that any of the Parties, or any representatives on their behalf, receives an inquiry about the dispute between the Parties or this Agreement, such Party (and any representatives acting on its behalf) shall either decline to comment or say the "matter has been resolved" without further comment.

14.    <u>Protective Order</u>: The Parties additionally represent that each has complied with the Confidentiality Agreement and Stipulated Protective Order executed by the Parties in connection with the Adversary Proceeding (the "<u>Protective Order</u>") and will continue to comply with that Protective Order after this Agreement is executed, including, but not limited to, the prohibition on the use of any materials received in the Adversary Proceeding in any other cases, actions, arbitrations, or other proceedings, and the Parties' obligations to return or destroy all material designated as Confidential or Highly Confidential, and to provide verification of such return or destruction at any other Party's request in accordance with the terms of the Protective Order.

15.    <u>No Transfer or Assignment</u>: The Parties represent and warrant that each has not assigned, transferred, or purported to assign or transfer, to any person or entity, any claim referenced herein or any portion thereof or interest therein.

16.    <u>Authority</u>: Each Party to this Agreement represents and warrants that it has the power and authority, and the legal right, to make, deliver, and perform under this Agreement, and have taken all necessary actions to authorize execution, delivery, and performance under this Agreement.  This Agreement constitutes a legal, valid, and binding obligation of the Parties, enforceable against them in accordance with its terms.

17.    <u>Advice of Counsel/No Reliance</u>:  Each Party has carefully read and reviewed this Agreement and understands it fully.  Each Party has made such investigation under law and facts pertaining to this Agreement as it deems necessary.  Each Party has been represented by competent counsel of its own choosing who has provided such party any and all advice on this settlement and this Agreement as it deems necessary.  This Agreement has been freely signed by each Party.  Each Party specifically confirms that it does not rely on any statement, representation, legal opinion, or promise of any other party or person, except as expressly stated in this Agreement.

*Execution Copy*

18.    <u>Binding Effect</u>:  This Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the Parties.

19.    <u>Third-Party Beneficiaries</u>:  The only Parties with any rights to enforce the terms of this Agreement are those Parties specifically identified herein.  There are no third-party beneficiaries of this Agreement.

20.    <u>Attorneys' Fees</u>: Each Party shall bear its own attorneys' fees and costs in connection with the New York Case, FCC Complaint, Bankruptcy Case, Adversary Proceeding, and this Agreement.

21.    <u>Modification</u>:  This Agreement shall not be amended or modified except by a writing signed by each of the Parties affected by such amendment or modification.

22.    <u>Applicable Law</u>: This Agreement shall be governed by and construed in accordance with the laws of the state of Texas, without regard to its conflict of laws provisions.

23.    <u>Exclusive Jurisdiction</u>:  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action.  In the event the Bankruptcy Case is closed by a final decree and not reopened, the Parties agree that any dispute arising out of or relating to this Agreement, or any provision thereof, may be brought in the United States District Court for the Southern District of Texas or the District Courts of Harris County.  Each Party hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out or relating to this Agreement.

24.    <u>No Waiver</u>: The failure to strictly enforce any or all of the terms of this Agreement by any of the Parties shall not be construed as and shall not result in a waiver of that Party's right to strictly enforce any and all of the terms and conditions of this Agreement, despite that Party's prior failure to strictly enforce the terms and conditions of this Agreement.

25.    <u>Construction, Severability</u>:  The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against any Party, nor will any rule of construction that favors a non-draftsman be applied.  Unless specifically otherwise provided or the context otherwise requires, the singular includes the plural and the plural the singular; the word "or" is deemed to include "and/or"; the words "including", "includes", and "include" are deemed to be followed by the words "without limitation"; and references to sections are to those of this Agreement.  If any provision of this Agreement is held to be void or unenforceable, in whole or in part, (i) such holding shall not effect the validity and enforceability of the remainder of this Agreement, including any other provision or paragraph and (ii) the Parties agree to attempt in good faith to reform such void or unenforceable provision to the extent necessary to render such provision enforceable and to carry out its original intent.

26.    <u>Headings</u>: The heading in each paragraph herein are for convenience of reference only and shall be of no legal effect in the interpretation of the terms hereof.

27.    <u>Counterparts</u>:  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

28.    <u>Full and Complete Agreement</u>: This Agreement contains the full and complete agreement of the parties hereto and all prior negotiations and agreements pertaining to the subject hereof are merged into the Agreement. Each party expressly disclaims reliance on any facts, promises, undertakings or representations made by any other party or their agents or attorneys prior to the execution of this Agreement.

29.    <u>Notices</u>: All notices, consents, waivers, and other communications under this Agreement must be in writing and shall be deemed to have been duly given when: (a) delivered by hand (with written confirmation of receipt) or (b) received by the addressee, if sent by email, in each case as follows (subject to the right of each Party to change this notice designation by written notice to the other):

| *If to MBG:* | *If to Marshall:* | *If to Nexstar:* |
|---|---|---|
| Pluria Marshall, Jr.<br>3731 Wilshire Boulevard<br>Suite 840<br>Los Angeles, CA 90010<br>pluria@mbgroup.tv | Pluria Marshall, Jr.<br>3731 Wilshire Boulevard<br>Suite 840<br>Los Angeles, CA 90010<br>pluria@mbgroup.tv | Elizabeth Ryder<br>Executive Vice President &<br>General Counsel<br>Nexstar Media Group, Inc.<br>545 E John W Carpenter Fwy<br>Suite #700<br>Irving, TX 75062<br>eryder@nexstar.tv |
| *with a copy to:* | | *with a copy to:* |
| Jason S. Brookner<br>Paul D. Moak<br>Gray Reed<br>1300 Post Oak Blvd.<br>Suite 2000<br>Houston, TX 77056<br>jbrookner@grayreed.com<br>pmoak@grayreed.com | | Jennifer M. Selendy<br>David S. Flugman<br>Selendy & Gay PLLC<br>1290 Avenue of the Americas<br>New York, NY 10104<br>jselendy@selendygay.com<br>dflugman@selendygay.com |

*Execution Copy*

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the ___ day of October, 2020.

MARSHALL BROADCASTING GROUP, INC.

_____

By: _____

Its: _____

PLURIA MARSHALL, JR.

_____

NEXSTAR INC.

_____

By: ____Perry A. Sook_____

Its: ____CEO_____

*Execution Copy*

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the _2LD_ day of ~~October~~, 2020.
NOVEMBER

MARSHALL BROADCASTING GROUP, INC.

By: _PLURIA MARSHALL, JR_

Its: _PRESIDENT & CEO_

PLURIA MARSHALL, JR.

NEXSTAR INC.

By: _____

Its: _____

8

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

MARSHALL BROADCASTING GROUP,
INC.,

               Plaintiff,

      v.

NEXSTAR BROADCASTING, INC.,

               Defendant.

---

NEXSTAR BROADCASTING, INC.,

               Defendant/
               Counterclaim-Plaintiff,

      v.

MARSHALL BROADCASTING GROUP,
INC.,

               Plaintiff/Counterclaim-
               Defendant,

and

PLURIA MARSHALL, JR.,

               Additional
               Counterclaim-
               Defendant.

---

Index No.: 651943/2019

**STIPULATION DISCONTINUING
ACTION**

     IT IS HEREBY STIPULATED AND AGREED, by and between the parties, by their undersigned counsel, that the above-captioned action, together with all cross-claims and counterclaims, be hereby discontinued, with prejudice and without costs to any party, and this stipulation may be filed with the Clerk of the Court without further notice.

Dated:    October \_\_\_, 2020


BOIES SCHILLER FLEXNER LLP          SELENDY & GAY PLLC

By:    /s/         *DRAFT*                          By:    /s/              *DRAFT*
     David Boies                                          Jennifer M. Selendy
     333 Main Street                                    David S. Flugman
     Armonk, New York 10504                     1290 Avenue of the Americas
     Telephone: (914) 749-8200                    New York, New York 10104
     E-mail: dboies@bsfllp.com                     Telephone: (212) 390-9000
                                                                   E-mail: jselendy@selendygay.com
     William C. Jackson                                            dflugman@selendygay.com
     William Bloom
     1401 New York Avenue, N.W.                *Attorneys for Nexstar Broadcasting, Inc.*
     Washington, D.C. 20005
     Telephone: (202) 237-5677
     E-mail: wjackson@bsfllp.com
               wbloom@bsfllp.com

     *Attorneys for Marshall Broadcasting*
     *Group, Inc. and Pluria Marshall, Jr.*

2

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| MARSHALL BROADCASTING | § | |
| GROUP, INC.,[1] | § | Case No. 19-36743 (DRJ) |
| | § | |
| Debtor. | § | |
| ------------------------------------------------ | § | |
| | § | |
| MARSHALL BROADCASTING | § | |
| GROUP, INC., | § | Adversary No. 20-03074 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| NEXSTAR BROADCASTING, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**<u>JOINT STIPULATION OF DISMISSAL WITH PREJUDICE</u>**

Pursuant to Federal Rule of Bankruptcy Procedure 7041 and Federal Rule of Civil Procedure 41(a)(1)(A)(ii), Plaintiff Marshall Broadcasting Group, Inc. and Defendant Nexstar Broadcasting, Inc. stipulate to the dismissal with prejudice of all claims in the above-captioned adversary proceeding.

Each party shall bear its own costs, fees, and expenses.

Dated: October __, 2020.

---

[1] The last four digits of the Debtor's federal tax identification number are (7805).

Respectfully submitted,

_/s/ DRAFT_                             _/s/ DRAFT_

**GRAY REED & McGRAW LLP**

Jason S. Brookner (Texas Bar No. 24033684)
Paul D. Moak (Texas Bar No. 794316)
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email: jbrookner@grayreed.com
        pmoak@grayreed.com

Lydia R. Webb (Texas Bar No. 24083758)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email: lwebb@grayreed.com

David B. Golubchik (_pro hac vice_)
Eve H. Karasik (_pro hac vice_)
**LEVENE NEALE BENDER YOO & BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: dbg@lnbyb.com
        ehk@lnbyb.com

_Counsel for Debtor_

**PORTER HEDGES LLP**

Joshua W. Wolfshohl
Jonna N. Summers
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6248 (fax)
Email: jwolfshohl@porterhedges.com
        jsummers@porterhedges.com

Jennifer M. Selendy (_pro hac vice_)
David S. Flugman (_pro hac vice_)
Jessica E. Underwood (_pro hac vice_)
**SELENDY & GAY PLLC**
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 390-9000
Email: jselendy@selendygay.com
        dflugman@selendygay.com
        junderwood@selendygay.com

_Counsel for Nexstar Broadcasting, Inc._

**<u>Exhibit 2</u>**

**Notice of Confirmed Plan and Effective Date**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| MARSHALL BROADCASTING | § | |
| GROUP, INC.,[1] | § | Case No. 19-36743  (DRJ) |
| | § | |
| Debtor. | § | |

**NOTICE OF EFFECTIVE DATE OF
THE DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

**TO ALL CREDITORS, EQUITY INTEREST HOLDERS, AND OTHER PARTIES-IN-INTEREST**:

      **PLEASE TAKE NOTICE** that on December 3, 2019  (the "Petition Date"), the above captioned debtor and debtor in possession  (the "Debtor") filed a voluntary petition  for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

      **PLEASE TAKE NOTICE** that on February [●], 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered the *Findings of Fact, Conclusions of Law, and Order Approving Debtor's Disclosure Statement and Confirming Debtor's Plan of Reorganization* (the "Confirmation Order") [Docket No.[●]].  Among other things, the Confirmation Order confirmed the *Debtor's Combined Disclosure Statement and Chapter 11 Plan,* dated December 31, 2020 (as amended, modified, or supplemented from time to time, the "Plan")[2] as satisfying the requirements of the Bankruptcy Code, thereby authorizing Marshall Broadcasting Group, Inc. (the "Debtor") to implement the Plan on the Effective Date.

      **PLEASE TAKE FURTHER NOTICE** that a copy of the Plan and the Confirmation Order may be obtained by contacting the Debtor's counsel, Jason S. Brookner, Lydia R. Webb, David B. Golubchik, or Eve H. Karasik, via electronic  mail at jbrookner@grayreed.com, lwebb@grayreed.com, dbg@lnbyb.com, and ehk@lnbyb.com.  The Plan and the Confirmation Order can also be viewed on the Bankruptcy Court's website at www.txs.uscourts.gov.

      **PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order, and their respective terms and provisions, are binding on the Debtor, the Reorganized Debtor, any entity acquiring or receiving property or a distribution under the Plan, and any present or former Holder of a Claim against or Equity Interest in the Debtor, whether or not the applicable Claim or

---

[1] The last four digits of the Debtor's federal tax identification number are (7805).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.

4831-5137-5065.3

Equity Interest of such Holder is impaired under the Plan and whether or not such Holder or Entity was deemed to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan was substantially consummated, and the Effective Date (as defined in the Plan) occurred, on [●], 2021.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order, and their respective terms and provisions, are binding on the Debtor, the Reorganized Debtor, any entity acquiring or receiving property or a distribution under the Plan, and any present or former Holder of a Claim against or Equity Interest in the Debtor, whether or not the applicable Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder or Entity was deemed to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that [●], 2021 (the "Administrative Claims Bar Date") was established by the Court as the deadline by which (i) holders of Administrative Claims must file proofs of administrative claim against the Debtor and (ii) holders of Professional Fee Claims must file final applications for payment of fees and reimbursement of expenses with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that all requests for payment of Administrative Claims must be filed with the Court and served on the Debtor and Debtor's counsel, and must, at a minimum, set forth (i) the name of the holder of the Administrative Claim; (ii) the amount of the Administrative Claim; and (iii) the basis for the Administrative Claim. A failure to file any such request in a timely fashion will result in the Administrative Claim in question being discharged and its holder forever barred from asserting such Administrative Claim against the Debtor or any other Person.

---

**ALL PLEADINGS FILED WITH, AND ORDERS GRANTED BY, THE BANKRUPTCY COURT ARE AVAILABLE FOR INSPECTION ON THE BANKRUPTCY COURT'S INTERNET SITE AT WWW.TXS.USCOURTS.GOV OR BY CONTACTING UNDERSIGNED COUNSEL**

---

4831-5137-5065.3

Respectfully submitted this [●] day of March, 2021.

**GRAY REED**

By:_____
Jason S. Brookner (TX Bar No. 24033684)
Lydia R. Webb (TX Bar No. 24083758)
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:    jbrookner@grayreed.com
              lwebb@grayreed.com

-and-

David B. Golubchik  (*pro hac vice*)
Eve H. Karasik (*pro hac vice*)
**LEVENE NEALE BENDER YOO**
**& BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:    dbg@lnbyb.com
              ehk@lnbyb.com

**CO-COUNSEL TO THE DEBTOR**

4831-5137-5065.3